Judge Marshall

delivered the opinion of the Court.
This action of ejectment was brought on the joint and several demises of Patton’s Heirs, for the recovery of a part of lot No. 32, in the city of Louisville, in possession of Applegate’s tenants, on whom the declaration was served, in June, 1832.
The evidence conduced to show that the title of Patton’s Heirs had been concentrated in Mrs. Gracy, one of said heirs and one of the lessors, who had become a widow before the commencement of the action, and the jury found a verdict for the plaintiff, on her sole demise. To reverse the judgment founded on that verdict, Applegate has brought the case to this court.
The most important questions presented for our consideration, grow out of the attempt of Applegate, to prove that the lessor, Polly Gracy, had parted with her title by deed, executed by herself and her husband, George Gracy, during the coverture.
The deed offered in evidence for this purpose, bears date on the 13th of May, 1820, and purports to be the deed of George Gracy and Polly his wife, of Caldwell county, in this State, and to convey to James K. Welch, in fee simple, that portion of lot No. 32, in the town of Louisville, which is now in contest. He proved that Gracy and wife resided in the county of Caldwell, during the whole of the year 1820, and that John H. Phelps was clerk of the County Court of said county, during the whole of that year. And, in support of the admissibility of the deed, he read the certificate written thereon by said Phelps, as clerk of said county, dated on the 4th of August, 1820, and stating, in the most precise and formal manner, the acknowledgment of the deed by the husband and wife, and the privy examination of the latter on *216 that day. He also read the certificate of the clerk of the County Court of Jefferson county, in which the lot is situated, endorsed on the deed, and stating that, on the 3d day of May, 1821, (more than eight months after the first acknowledgment,) George Gracy had acknowledged it in his office, and that the acknowledgment thereof by Polly Gracy, being duly certified, he had recorded the deed and certificate. And also, a second certificate of said last named clerk, endorsed thereon, showing that the same deed had been again produced to him, in his office, on the 3rd of May, 1837, and that, at the request of Applegate, he had recorded it, with the two certificates above mentioned, and this certificate. He read, also, the deposition of John H. Phelps, conducing to prove the same facts stated in his certificate on the deed. And having introduced evidence conducing to prove, that the possession of said lot had been held by the grantee in the deed and those claiming under him, from 1821 to the time of trial, and having, also, offered witnesses to prove that, according to the universal construction of the county, the bar and the bench, up to 1820, a deed duly signed, sealed and acknowledged, and certified, was good and sufficient to pass the title in all cases, as between the parties, and that recording was only required to give it validity against creditors and purchasers, and that much property was involved in this construction—which evidence was rejected—the Court refused to permit, either the original deed, or a copy from the record of 1837, to be read to the jury: to which the defendant excepted.
Questions presented.
All the questions made in argument by this state of case, resolve themselves into these three:—
1. Was the deed, or any copy from the record of it, admissible as evidence, according to the laws relating to the conveyance of the estate of femes coverts, as those laws existed at the date of the deed?
2. Does the tenth section of the act of 1831, (1 Stat. Law, 453,) embrace this case, so as to give an effect to the recording of the deed, either before or after its passage, which such recording would not have had according to the previous law?
To make a valid transfer of the title of a feme covert to land, she must unite with her husband in the conveyance; her privy examination and acknowledgment must be certified in due form, upheld on the deed, and the certificate must be recorded, with the deed, in the proper office, within eight months from its date; otherwise the deed will not be obligatory upon the feme or her heirs, nor admissible as evidence against her or them; and it cannot be made valid afterwards, but by her act.
And, 3—if such be the effect of the tenth section of the act of 1831, is it, as to that matter, constitutional?
I. It was decided in the case of Anderson vs Turner, 2 Litt. 237, and has been adhered to ever since, that even in case of the deed of a male grantor, the clerk’s certificate of his acknowledgment of the deed, is evidence for no other purpose but to authorize its admission to record, and that, as the clerk has no authority to record the deed after the time prescribed by law, the deed, though recorded in fact after that time, cannot be read as evidence, without other proof of its execution than that furnished by the certificate. Upon the same ground, the deed of husband and wife was rejected in the case of Winlock vs Hardy, 4 Litt. 272, because it was not recorded in the time prescribed by law, and there was no other proof of its execution than the certificate. So that, if the deed, with the certificate of the due acknowledgment of a feme covert, should be placed only upon the same footing as that of a male grantor with a certificate of due acknowledgment by him, the deed, if not recorded within the prescribed period, could not be read as evidence of the transfer of her right, unless upon one of the following hypotheses: viz. first, that the due acknowledgment and privy examination of the wife might be proved by parol, independently of the certificate, which would not be contended for, (see Barnett vs Shackleford, 6 J. J. Marsh. Elliott &c. vs Peirsol, 1 Peter’s Rep. 340;) or, second, that by the second acknowledgment of the deed by Gracy, after the time of recording it on the original acknowledgment had expired, the deed might then or afterwards be recorded, together with the original certificate, so as to give it all the effect that it would have had, if recorded within time, on the first acknowledgment; which is negatived by the case of Speed vs Brooks, 7 J. J. Marsh. 120, and McConnell vs Brown, Litt. Sel. Cases, 465. According to the principle of which cases, the clerk of Jefferson was not authorized to record the deed on this second acknowledgment, even as the deed of George Gracy; and, a fortiori, this second acknowledgment by him, gave no authority to record it as the deed of Mrs. Gracy, upon the original certificate.
*218 But it is contended that, by the true construction of the statutes in force prior to 1831, the deed of a feme covert is not required to be recorded, to pass her title as against herself and her heirs; that, by the statute of 1748, her privy examination only is required to be recorded; and that, in the changes which have taken place in the mode of taking the acknowledgment or privy examination, this requisition of the statute of 1748, when applied to the modern forms of taking the acknowledgment, may and should be understood as being satisfied by writing the certificate itself of acknowledgment, and as constituting that, in effect, the record of the privy examination which is essential to pass the estate. If this were so, it might well be contended, that the certificate of privy examination accompanying the deed, would be always sufficient proof of the due execution of the instrument by the feme, and of the transfer of her title. The concession of this conclusion would, however, lead to the result, that, while it is obviously the intention of the statutes to throw around the feme covert, in the act of passing her estate, a special guardianship, and to require the highest grade of evidence to establish the act by which her title is divested—the clerk’s certificate, which, unless recorded, would cease to be evidence against her husband in the lapse of a few months, would retain all its force, as evidence against herself and her heirs, for ever. The Legislature might, undoubtedly, have given to the certificate a permanent, and even a conclusive effect, as evidence against the feme, without giving the same effect as to the husband. But while the statutes furnish no sufficient evidence of such an intention, this Court has, in various decisions, defined the precise effect of the certificate, as evidence against the husband; and we should hesitate before we should, upon any doubtful construction, give it a different operation against the wife. The cases already referred to on this point, give to the certificate of the clerk, stating the due acknowledgment, &c„ by a male grantor, the limited effect of authorizing the Clerk, within a given period to record the deed as his, and of furnishing a permanent test and evidence of that authority. And unless the statutes clearly required a dif *219 ferent effect to be given to the certificate of the feme’s acknowledgment, these cases would require the same effect to be given to it.
But it has been decided that the certificate of the clerk is but an act en pais, and not a record until it is itself recorded; and that the requisition of the statute of 1748, when applied to the modern forms of taking the acknowledgment of deeds, requires the certificate of privy examination itself to be recorded. Elliott &c. vs Peirsol, 1 Peters, 341; Prewitt vs Graves, 5 J. J. Marsh. 118, 121, &c. Blair vs Whitaker, 3 J. J. Marsh. 241. So that the mere making of the certificate, is not the recording of the privy examination required by the statute.
It is, however, contended further, that there is, in the statute of 1748, a clear distinction, between the recording of the deed, which is required in all cases, to render it valid against creditors and purchasers, and the recording of the privy examination which is declared to be necessary to make the deed valid against the feme covert grantor and her heirs. That, as to creditors and purchasers, all deeds are declared to be void unless recorded within eight months; while the statute only declares, as to femes coverts, that when a deed has been acknowledged by a feme covert, and no record made of her privy examination, such deed is not binding upon the feme or her heirs. From which it is argued, that, although the deeds of femes covert are not good, under the statute, against creditors and purchasers from the feme, unless recorded within eight months, there is not any such limitation of the time within which the privy examination must be recorded, to make the deed binding on the feme and her heirs, and there is nothing to indicate that the deed itself must be recorded at any time, in order to give it this effect; and, as no subsequent statute contains a similar declaration, to the effect that, unless the privy examination be recorded, the deed shall not be obligatory upon her oilier heirs; but all of them, after declaring that the deed shall be void against creditors, &c. unless recorded in a certain time, provide more convenient modes of taking the acknowledgment and privy examination of married women, and declare, affirmatively, that the deed record *220 ed, together with the certificate or other evidence of privy examination, shall not only be sufficient to release any right of dower, &c. but shall be as effectual for every other purpose, as if the feme were an unmarried woman ; it is urged that, the time of recording still relates only to the purpose of making the deed valid as to creditors and purchasers, and not to its obligatory force against the feme and her heirs, which, at most, according to the argument, depends upon its being recorded, and not upon its being recorded within any prescribed period.
There is certainly great force in this argument. Upon a careful review of the modern statutes, we are satisfied that their principal intent is to facilitate the passing of the estates of femes covert, by deeds acknowledged on privy examination. And there would be great plausibility in the argument that, as the statutes evidently intend to enable a married woman, by deed acknowledged on privy examination, to convey her lands, and as the recording of the deed, and of the privy examination, or certificate thereof, though necessary to make the deed effectual for all purposes, is essentially separate and distinct from the act of executing and acknowledging the deed, which she is enabled to do on privy examination—her deed duly executed and certified, though not recorded with the certificate, might be deemed valid against her, if it were not for the declaration above cited from the act of 1748, and the requisition in each subsequent act, that she shall consent that it (the deed) may be recorded. And, even under the force of these indications of the necessity of recording, though indefinite as to the time, there would be some ground for concluding, that it was not necessary to record the deed within eight months, to make it valid against the feme and her heirs, if there were any authority to record it, or the privy examination taken by the clerk, after the expiration of the eight months. But there was no such authority at the date of this deed.
The deed, say the statutes, recorded together with the certificate &c. shall be as effectual for all purposes, as if she were a feme sole. But, if she were a feme sole, the deed would not be effectual for all purposes, nor would it *221 acquire any effect from being recorded, if it were not recorded within eight months. For this reason, as well as because it is the deed also of the husband, and, as such, is only authorized to be recorded in eight months, we concur in the opinion expressed in the cases of Blair vs Whitaker, 3 J. J. Marsh. and Prewitt vs Graves, 5 Ib. that, as the deed of the wife, it is only authorized to be recorded within eight months. And, as the clerks have no authority to record the privy examination separately from the deed, the declaration of the act of 1748, which is to be taken as a part of every subsequent act regulating the mode of passing the estate of femes covert by deed on privy examination, seems to leave no alternative, but to adopt the conclusion adopted by this Court in the two cases last referred to, that the deed is not obligatory upon the feme or her heirs, unless recorded, or at least lodged for record, in eight months.
Even, if it be true that, in pursuing the mode of acknowledgment and privy examination in court, or under its immediate authority, as contemplated by the act of 1783, the recording of the privy examination, which was to be done in the court and by its order, was not subject to the same limitation as is prescribed for the recording of the deed to make it good against creditors, the change, by which, for the convenience of parties, the power of taking the acknowledgment and privy examination was conferred upon a single individual out of court, might of itself furnish a very good reason for restricting the period within which the facts were to be recorded, and thus to become obligatory upon the feme. It would be unreasonable that, the mere memorandum or certificate of the clerk, a mere act en pais, without the sanction of a court, and without the publicity of a record, should be a perpetual evidence against any one. And the law makers, when they were withdrawing some portion of the safeguard which had previously been furnished to protect the feme covert from imposition and undue influence in doing what was to be done by her towards passing her estate, might well have deemed it prudent to define and limit the period within which the act was to be made irrevocably obligatory upon her, by putting the evidence of it *222 upon record, or at least in the office where the evidences of title are deposited. It was doubtless to prevent the fabrication of false evidence of the due execution and acknowledgment of the deed by the feme, that her privy examination was required to be recorded. And, although it might not be necessary when it could only be evidenced by the acts and records of a court, to limit the precise period within which this evidence should be furnished, there was an evident propriety in doing so when the binding evidence of the fact could be furnished, by the certificate of the clerk. Nor can the grantee who takes this easy mode of obtaining the execution of the deed, complain of the easy condition imposed on him, of delivering it for record in the proper office, and of doing his part towards consummating the conveyance. The hardship which may ensue from a failure to perform this slight act on his part, can have no weight in determining the question whether the condition was imposed.
The act of 1810 (Statute Law, 447,) under which this deed, for land in the county of Jefferson, was acknowledged before the clerk of Caldwell county, and certified by him, was the particular subject of construction in the case of Blair, vs Whitaker; and, in that case, the deed of the feme, though certified to have been duly acknowledged, not having been recorded in the proper office within the proper time, the title was declared to be in the heirs of the feme. In the case of Prewitt vs Graves, the opinion of the court declares, that the same result would take, place under the more general statutes, which, as to the necessity of recording, and the time within which it is to be done, are essentially the same. It is true that, in the last case, the certificate of acknowledgment was imperfect, and the case might perhaps have been decided without deciding the point now in question. But this point was elaborately argued by the court, and distinctly decided, and the decision then given, is entitled to great consideration. It is also true, as is apparent from the opinion in the case of Blair and Whitaker, that the point now in question had not been seriously discussed in the first arguments of the counsel; but it was made by the court, the turning point in the case, and it must be presum *223 ed that, oil the second argument, this question was fully discussed; after which, a court composed of new members, concurred in the former decision. We feel bound, therefore, to regard this case as a precedent; and, although both of the cases together may not be considered as conclusively settling the law on the subject, they are so fortified by numerous other decisions, in which questions nearly connected with this, and laying the basis of its decision, are settled, that we should not depart from them, but upon very clear conviction that they were erroneous. The case of Elliott vs Peirsol, is also a high, though not a binding authority, for the principle decided in those cases. To reverse the principle would unsettle many other cases, and particularly those which decide upon the effect of the certificate of acknowledgment of deeds. Under these considerations, and from our own view of the construction and effect of the statutes on the subject, we are of opinion that, according to the laws in force at the date of this deed, and at the time when it should have been recorded, its obligatory force upon Mrs. Gracy, depended upon its being recorded, or at least lodged fox record, in the proper office, within eight months from its date; and that this not having been done, it became at the end of the eight months incapable, according to the laws then in force, of being rendered obligatory, except by the act of the grantor; and that therefore, it could not have been properly admitted, as evidence against her, upon any of the certificates or other proof that was made of its execution.
Whether a court should, under any circumstances, receive evidence of the construction and effect of a statute, is doubtful. It was certainly proper to reject such evidence, when decisions of the court of last resort had settled the construction of the statute.
With regard to the offer to prove the common opinion, up to 1820, as to the construction of the statutes, it may be remarked that, the two cases of Blair vs Whitaker, and Prewitt vs Graves, were decided upon deeds, of which one was executed in 1819, and the other in 1821, and that the decisions were made by judges who had been long on the bench or at the bar, and who must have known the common opinion and practice on the subject, and must be presumed to have given due weight to all considerations of that character. Those cases show, that the construction intended to be proved, was not universal; and to whatever weight the common opinion, if it were such as *224 was intimated, might have been entitled in a case of the first impression, either in the Circuit Court or in this Court, the Circuit Court was not bound to hear the evidence of witnesses, as to the construction of a statute, after it had been twice construed by the highest judicial tribunal, even if it had been at liberty to hear such testimony before any such construction had been given.
The tenth sec. of the act of 1831—which provides that deeds not recorded within the prescribed time, may be recorded, with effect from the time of recording, and that copies of recording deeds may be read as evidence, although they were not recorded in time, does not extend to conveyances made by femes covert, before its passage.
II. The tenth section of the act of 1831 (Stat. Law, 453,) enacts, in substance, that deeds which have been, or shall be, duly proved or acknowledged, but not lodged for record in the proper office in the time prescribed by law, they have not been recorded, may be recorded with effect from the time of recording; and that, if they have already been recorded, but not within due time, copies from the record may be used as evidence in the same manner as if the deed had been recorded within proper time. The question now is, whether the deeds of married women were embraced in this provision. If they are embraced in this helping statute, it is because, according to the previous statutes, the limitation of the time for recording applied to these deeds, as well as others. It is further apparent that, if this case is embraced in the statute, the deed having been recorded long before its passage, is embraced in the last, and not within the first clause of the tenth section. But regarding the section as we think we should do, as intending to give effect to the previous as well as to the subsequent record of the deeds to which it refers, if this deed be embraced, and the statute be allowed its intended effect upon it, the consequence would be that, either the original deed with its two first certificates, or a copy from the record of it, would be admissible as evidence of the transfer of Mrs. Gracy’s title.
It is impossible, in construing this statute, to leave out of view the wide and important distinction between the effect of recording the deed of a person who is sui juris, and that of recording the deed of a feme covert. In the former case, the recording is necessary, only to make the deed valid against creditors and subsequent purchasers without notice; in the latter, it is necessary to pass the title out of the grantor, and, as the statute of 1748 de *225 clared this, as the subsequent statutes, in effect, declare the same thing, as well by not repealing the declaration of the statute of 1748, as by expressly requiring the consent of the feme, that the deed should be recorded, and as the same statutes have also limited the time of recording to eight months, and the highest judicial tribunal had decided the effect of these statutes to be that, if the deed and privy examination were not recorded within eight months, the title remained in the feme, and passed to her heirs, we think the legislative intention to give effect to the recording of such a deed, after the time previously limited for it, had expired, should be clearly expressed, before the statutes should be so applied, as in effect to divest a title which, according to the pre-existing laws, could not be divested without the further act or consent of the holder. And the great doubt which must exist as to the constitutional power of the legislature, to make that operate as evidence to divest a title, which, up to the passage of the act, was wholly incompetent for that purpose, is an additional reason for not giving such an effect to the act, unless such was clearly the legislative intention.
The words descriptive of the deeds to which the section applies, are broad enough to embrace the deeds of femes covert, duly certified, but not lodged for record in proper time; but they may have been intended to apply only to the deeds of others in that condition, and to make such deeds effectual against creditors and purchasers; and, if this is rendered probable by other language used in this section, or by a comparison of this with other sections of the Statute, the general words should be understood in the restricted sense.
It is to be observed, then, that the term lodged for record, used in describing the condition of the deeds referred to, is not used in any previous statute, in prescribing what is to be done to render the deed of a feme covert effectual for all purposes—all of them using the word recorded. It is also to be-observed that, this section makes no reference to the recording of the certificate of privy examination, which is particularly specified in all previous statutes providing the mode for passing the estates of *226 femes covert by deed. And although the ground of both of these criticisms might, perhaps, be removed by implication, the language used is entitled to some influence in determining whether the legislature was contemplating the deeds of femes covert, or only those of other grantors.
The act of '31 provides for perfecting the deeds of femes covert, by re-acknowledgment and privy examination (§6,) and by suit in chn’y (§11,) in which there must be proof of her execution of the deed, and of seven years’ possession under it.
Query, whether the deed, of a feme covert, upon which her privy examination and acknowledgment are duly certified, made since the act of ’31, may not pass her estate without any registration, by virtue of the first section of the act.—However that may be, the act does not apply to deeds made before its passage.
It is to be observed further, that in the sixth and eleventh sections of the statute, provision is made for perfecting the deeds of femes covert—in the sixth, by the reacknowledgment and privy examination of the feme, and in the eleventh, by a suit in chancery, in which there must be, not only proof of her execution of the deed, but it must also appear, that there has been seven years possession under it, before it is to be rendered effectual. The express reference to femes covert in these two sections, and the caution which is evinced in giving effect to their imperfect deeds, tend to destroy the inference that, in the tenth section, which makes no mention of femes covert, and makes no provision for any act to be done by a feme covert, or for the intervention of any proceeding for the ascertainment of facts which might affect her rights in equity and good conscience, the Legislature intended, if they could, to make that obligatory upon her, by the mere act of a third and interested person, which was before wholly unobligatory by the express letter of the act of 1748.
The first section of the act of 1831, does, it is true, enact that the privy examination of the feme, duly certified, shall pass her estate, without expressly requiring any record of the deed or certificate; but if this should be understood as dispensing with the necessity of such record, in order to make the deed valid as against the feme in future cases of the execution of deeds by them, this section has no reference to past cases, and cannot demonstrate the intention of the legislature, to apply this new principle to past cases, by the provisions of the tenth section.
And, although one of the two sitting members of the court, in this case, is still inclined to think that such may have been the intention of the legislature, even he does not consider this construction free from rational doubt; and both are of opinion that, in a case of doubt *227 as to the legislative intent, and of doubt at least, as to the legislative power to carry a particular purpose into effect, consistently with the constitution, such a purpose should not be attributed to the legislature, and no such operation should be given to its acts.
The constitutional question made in this case, is precluded by the decision on other points.
A defect in plaintiff’s proof—for which he might be non-suited may be supplied, by evidence introduced by defendant, so that the judgment cannot be reversed for the defect.
The result is, that the court, as now constituted, does not decide that the act extends to deeds of femes covert, made before its passage, not recorded in time, and as to which, the time for recording had expired before the passage of the act; and consequently, that the act is not to be understood as embracing this case.
This conclusion dispenses with further investigation of the question of the constitutionality, or unconstitutionality, of the act, in any retrospective aspect: and determines that, in our opinion, there was no error in rejecting the deed.
The questions made upon the deed of the Trustees of Louisville, to Patton, the father of Mrs. Gracy, are substantially the same as were decided in the case of Fitzhugh and Thruston vs Croghan, 2, J. J. Marshall 429, and need not be now stated. And, although it be conceded that, as that deed purports to convey a lot by a different number than that which belongs to the one now in contest, therefore the court should have non-suited the plaintiff, on the defendant’s motion, in the absence of all proof that the number had been changed, or that the lot was in fact the same—still, as the evidence afterwards introduced by the defendant, and especially that offered by him, conduced to show that the lessor, Polly Gracy, had title, if it was not divested by the deed to Welch, the judgment should not be reversed, because the Court refused to non-suit the plaintiff on his own evidence.
Wherefore, the judgment is affirmed,