Judge Stites
delivered the opinion of the Court.
The important question presented by this record is whether a feme covert, who unites in a deed, with her husband,-in conveying her own estate, is liable, upon the death of the husband, upon a breach of the covenants of warranty in such deed.
authorizes the conclusion that a feme covert uniting with her husband in a conveyance of land in which there is a war-ant,y of title, is bound with, or as the surety of the husband in such warranty. The statutes only enable her to pass her title.
Its determination must depend upon the effect to be given to our se.veral statutes of conveyances prescribing and authorizing married women to convey their real estate, for at common law the deed of a feme covert was void, and except by statute there is no power conferred upon them in this state to convey their property.
It was said by this court, arguendo, in Wall vs. Nelson, 3 Littell, 395, that a feme covert “might, by uniting with her husband in a deed containing suitable covenants, have imposed upon herself an obligation to warrant the land against adverse claimants.” And allusion is made to this doctrine in Deering vs. Shelton, 10 B. Monroe, in terms of approbation; but in neither case was the question now up, directly presented, nor authoritatively settled; so that the point now considered remains yet to be determined by this court; and in arriving at a proper conclusion, it will be necessary to notice the phraseology of the various statutes of this state authorizing conveyances by married women.
The act of 1748 (1 vol. Stat, Law, 431,) declares such deeds effectual “to convey and pass over the estate” of the wife.
That of 1776, (3 vol. Stat. Law, 140,) that the conveyances made in pursuance of its provisions, “shall be effectual for passing the estate of the feme covert.”
The language of the act of 1831 (1 vol. Stat. Law, 452,) is similar, and only declares that deeds made under it, shall “be effectual to pass all the estate and dower which the grantors or grantor had in the land.”
The phraseology of the acts of 1785 and 1796, (1 vol. Stat. Law, 434, 440,) is somewhat different, and more comprehensive. Both these acts declare, that deeds made under them, shall not only be sufficient to pass the dower right of the feme covert, “but be as effectual for every other purpose as if she were an unmarried woman.”
*639 If unrestricted latitude is given to the words thus used, and they are not to be construed with reference to the subject matter, as well as the preceding and subsequent acts, supra, the effect would be to confer upon the feme covert, thus conveying, full and plenary power, as a feme sole, to bind herself personally, by any direct or collateral covenants inserted in such deeds, relieve her from the disabilities of coverture, and in a measuse change the law regulating marital rights, and subject it, in such transactions, to the control of the parties. Such could not have been the intention of the legislature. The object of the acts in question was to facilitate the mode of conveying real estate by married women, not to alter the law of marital rights, nor remove from the feme covert the protection which she derives from coverture, and enable her, by such conveyances, to incur responsibilities and obligations to affect her personally after discoverture. The language of the preceding acts, and that of 1881 making such deeds only “effectual to pass the estate,” shows the intent of the legislature, whilst establishing regulations upon the same subject. And the words, “every other purpose as if she were an unmarried woman,” when taken in connection with the words, “shall not only be sufficient to convey and release her any right of dower thereby intended to be conveyed or released,” immediately preceding, must be construed as authorizing such feme covert to convey every other estate she might have in the land sought to be conveyed, and making a deed executed in pursuance of the provisions of the statutes, effectual therefor, as well as to pass dower estate.
But in Deering vs. Shelton, supra, we are furnished with a construction of the words referred to. This court there say: “These general words must be construed with reference to the subject matter, and cannot be supposed to have been intended to enable or permit a feme covert to do, by means of such a deed, every possible thing which a person sui juris might *640 do by means of a deed containing a conveyance of land. If the words are to be taken in their utmost latitude, a husband and wife might, through the instrumentality of a deed conveying land, enable the wife to make any agreement which an unmarried woman might be competent to make, and the whole law regulating the marital rights and disabilities of coverture, might be changed or subjected to the will of the parties.”
In no case that we have been able to find, has this court given a construction to the acts in question variant from that laid down in Deering vs. Shelton, and approved of here; and in none, except Wall vs. Nelson, and that of Deering vs. Shelton, has it been intimated that a wife would be answerable in damages upon covenants in a deed conveying her own land during coverture.
In almost every instance in which the statutes referred to are spoken of by this court, and deeds executed under their provisions are mentioned, such deeds are treated as simply passing the estate of the wife, and operating only to preclude her from asserting title to the land so conveyed. In Applegate vs. Gracy, 9 Dana, 222, a case involving the construction of the statutes now considered, upon another question, this court say: “Upon a careful review of the modern statutes, we are satisfied that their principal intent is to facilitate the passing of the estates of feme coverts, by deeds acknowledged on privy examination.”
In support of the conclusion at which we have arrived, to-wit, that the extent and effect of a deed of a feme covert uniting with her husband in conveying her land, under the statutes, should be, and is, to divest her of her estate in such land, we have high authority.
In Rawle on covenants for title, a valuable and interesting treatise upon this subject, it is said— “Questions have arisen as to the liability of a married woman under covenants for title entered into by *641 her jointly with her husband, in a conveyance of her estate. The general principle undoubtedly is, that a woman shall not be bound to answer the damages for any contracts made by her during coverture. But there was, it would appear, a distinction observed as to her covenants for title. It having been held in an early case, that if a husband and wife grant land belonging to the wife, by fine, with covenant of warranty, an action would lie against her after the husband’s death, in case of the ^grantor’s eviction. This case may be accounted for by the high and solemn nature of a fine, being a proceeding of record in face of a court whose judges were supposed to watch over and guard the rights of the wife. But in this country, where the wife’s interest is in general passed by a less solemn form of assurance, and even in England, since a recent statute has abolished fines, and substituted the more simple acknowledgment upon privy examination, which prevails in this country, the opinion seems to prevail that no rule of law exists by which a married woman can be bound to answer in damages, by reason of her covenants for title entered into by her jointly with her husband, although her estate may have passed by a proper acknowledgement.” (Rawle on Covenants, 573, 574.)
Chancellor Kent says : “The doctrine that a wife' can be held bound to answer in damages on her covenants of warranty, entered into during coverture, is not considered by the courts of this country to be law; and it is certainly contrary to the principle of the common law, that the wife was incapable of binding herself by contract.” (Kent's Com. 2nd vol. 167.)
The same doctrine is affirmed by Chief Justice Parsons, in Fowler vs. Shearer, 7 Mass. Rep., 21; and in Colcord vs. Swan, same book, 291.
The reasons assigned in the foregoing authorities, apply with full force to cases arising under our statutes. For although the conveying and passing of *642 the estate is made as effectual by privy examination and acknowledgment before the proper officer, and authentication by him, as if done by fine and common recovery at common law, it would be going rather too far, to say that such officers or their deputies should be substituted in the stead of courts of justice, to advise, and watch over the rights of married women, and be presumed, upon every privy examination of a feme covert conveying her estate, taken before them, to protect her interest and advise her of the nature and obligations of every covenant contained in the deed about to be. acknowledged, so as to bind her personally upon such covenants. The manner of taking such acknowledgements in this country, before deputies and other persons not familiar with the character and extent of such covenants, is too loose and informal to authorize the assumption that any such information is imparted to the feme covert. And reason and sound policy, as well as a due regard to the interests of married women, forbid such an interpretation of our statutes, as will extend the effect of such conveyances beyond the divestiture of the estate of the feme covert who may execute them.
It follows, from the foregoing views, that the deed relied on in this case does not furnish a cause of action against Mrs. Tibbatts, personally. And as the deed itself, nor any allegation in the petition authorizes the conclusion, that she intended to charge her separate estate, if she had any; and as no attempt is made to charge her as distributee or devisee of her •husband, we are of opinion that the petition disclosed no cause of action against her, and that the 'demurrer was, as to her, rightfully sustained.
. Wherefore, the judgment is affirmed.