The Chief Justice

delivered the Opinion of the Court.
Thomas Alsberry and Leah, his wife, once citizens of Kentucky, emigrated, in 1824, to the Province of Texas, where he died in 1826, and where she continued to reside until the summer of 1836, when she returned to this State, on a visit to her daughter, intending to go back to Texas, as her home. In a short time after her arrival here, she filed a bill in chancery against Strother J. Hawkins, for dower in land which he had purchased from her deceased husband, during her coverture, and prior to their removal to Texas. Her claim was resisted chiefly on the ground that she had ceased to be a citizen of Kentucky and of the United States; which she denied, though she had sued as a non-resident. And the Circuit Judge, being of the opinion that she had become an alien, dismissed her bill.
As it is an undoubted doctrine of the common law of England, in force here, that an alien cannot hold or take *178 dower in land in this State, there can be no doubt that, if Mrs. Alsberry had ceased to be a citizen of the United States when her husband died, her bill was properly dismissed; because her initiate right to dower, whilst a citizen of Kentucky, could never become consummate by operation of law, unless, at the time of her husband’s death, she had a legal capacity to take and hold.
The right of an American citizen to emigrate, and renounce his allegiance to the government of the Union and of his state, is universally conceded. And whenever the right has been exercised, it is presumed to have been done with the concurrence of both governments, tho’ without the express sanction of either.
The mode of expatriation might, no doubt, be regulated by law; but no limitation of the right having been prescribed, one who has, in good faith, become a citizen or subject of a foreign power, must be considered as being denationalized here, at least as to civil rights, and as long as the government acquiesces.
A Va. statute provides a mode of establishing the fact of expatriation: but it is not the only mode.
A former citizen of Ken. who has emigrated to Texas, is presumed to have done so with the acquiescence of the governments of that state and of the union, and must be deemed an alien, even as to political rights & duties, and still more decisively so, where rights merely civil are involved.
*178 Whatever may be the speculative or practical doctrines of feudal governments or ages—allegiance, in these United States, whether local or national, is, in our judgment, altogether conventional, and may be repudiated by the native as well as adopted citizen, with the presumed concurrence of the government, without its formal or express sanction. Expatriation may be considered a practical and fundamental doctrine of America. American history, American institutions, and American legislation, all recognize it. It has grown with our growth and strengthened with our strength. The political obligations of the citizen and the interests of the Republic may forbid a renunciation of allegiance by his mere volition or declaration at any time and under all circumstances. And therefore, the government, for the purpose of preventing abuse and securing the public welfare, may regulate the mode of expatriation. But when it has not prescribed any limitation on the right, and the citizen has, in good faith, abjured his country, and become a subject or citizen of a foreign nation, he should, as to his native government, be considered as denationalized, especially so far as his civil rights may be involved, and at least so long as that government shall seem to acquiesce in his renunciation of his political rights and obligations.
By a legislative act of 1786, our parent State recognized the right of voluntary expatriation, and prescribed a very simple and summary mode of authenticating the exercise of it. But this prescribed proof of expatriation, thus declared to be conclusive, is not, of course, the only admissible or satisfactory evidence of the fact that the admitted right has been exercised.
Then if, in fact, Mrs. Alsberry had become a citizen of Texas in good faith and with the presumed acquiescence of her native government, she thereby became, in judg *179 ment of law, as well as in fact, an alien, as to that government, national as well as local, even so far as the political rights and obligations of a citizen may be concerned, and the more especially, so far as the merely civil rights of citizenship may be involved. Whether, in the absence of any proof of express assent by the government of the United States, she should be deemed to have dissolved her native allegiance, that government would still have the high political authority to determine for itself. But until it shall have asserted a claim to her continued allegiance as a citizen, the legal presumption, in all collateral inquiries, should be, that she had, both politically and civilly, become an alien here, de jure, as well as de facto, if, in fact and in good faith, she had become a citizen of Texas.
The gen. gov’t, must determine whether an allegiance that was due to it, has been dissolved but untilit asserts some claim to continued allegiance, the presumption is, that the party has become an alien de jure, as well as de facto.
A widow would not be divested of her perfect right to dower, by becoming an alien, without office found, if at all. But a court of eq. would hardly aid her (when an alien) to obtain the possession of land here; especially, in a case of concurrent jurisdiction.
A woman went with her husband, when he emigrated to, and settled in, Texas—where he died in 2 or 3 years. She remained about 10 years longer in the course of which time, new forms of gov’nt, were established there, to which she presumed to have been a party; she then came back to Kentucky, on a visit, intending to return to Texas as her home: these facts are sufficient evidence prima facie, of her being an alien, and impose on her the burden of repelling that conclusion, to sustain a claim to dower here.
If, at the time of her husband’s death, she was still a citizen of the United States, she then became vested with a perfect right to the dower claimed in this suit. And even if, by afterwards becoming an alien, her vested right could be subjected to forfeiture, an inquisition of office found would be necessary to fix and ascertain the divestiture. But, in the case of Brooks et al. vs. Clay, (3 A. K. Marshall, 549,) this Court decided that a citizen of Kentucky does not, by voluntary expatriation, lose any pre-existing right to land here. We should be inclined however to doubt whether—in cases of concurrent jurisdiction especially—a court of equity should exert its extraordinary power to assist such an alien to obtain the possession of land thus claimed in this State.
But we are of the opinion that, if Mrs. Alsberry should be deemed to be now an alien here, she should be presumed to have been an alien when her husband died. Her voluntary residence in Texas, for ten years after her husband's death, and her expressed intention to continue that residence indefinitely, corroborate the deduction arising from the simple and unexplained fact of their removal to and settlement in Texas ; and that is, that they intended to remain there, and identify their fortunes with *180 those of that community, and as constituent members of that body politic. According to the principle recognized in the case of Shanks et al. vs. Dupont et al. (3 Peters, 248,) if her husband had become an alien before his death, she was then an alien also, in a political point of view. And though, being sub protestati viri, her removal with her husband, and his expatriation, might not necessarily conclude her as to her civil rights, yet these facts should, in our opinion, be so far prima facie evidence against her, as to her own alienage, as to impose on her the burthen of repellant proof, which she has not attempted to make in this case.
And, as Thomas Alsberry and his wife settled themselves in Texas, in 1824, with the ostensible purpose of making it their permanent home, and especially as she remained there, with the same apparent intention, for years after his death, and even until after revolutions had been effected in the political relations of that country, its independence had been declared, and a new constitution, to which she should be presumed to have been a party, had been adopted, we are of the opinion that she as well as he, should be deemed to have ceased—so far as by her own act she could cease—to be a citizen of the United States, before his death—unless there had been some proof to the contrary, or some fact tending to show that the removal to Texas was for a temporary or special purpose only, or without an intention to become citizens of that country. The question of expatriation, like that of domicil, so far as it depends on the citizens will, is to be decided ex facto et animo. But though the fact of removal to Texas, without the intention to become citizens of that country, would not be sufficient to show that either Thomas Alsberry or his wife had ceased to be citizens of the United States; nevertheless, such intention, and the actual consummation of it, should be inferred from the unexplained fact of removing and settling as a family, fortified, especially, as that deduction is, by subsequent events which must reflect on the first and principal act itself, and aid in giving the true construction to its objects and legal effects.
Tho’the laws under which immigrants in Texas become citizens, are not judicially known to this court, the husband and wife in the case sup., it must be presumed,became citizens there according to law. Held therefore that she having been an alien at the time of her husband’s death, is not entitled to be endowed of land here, of which her husband was possessed, and which he aliened during the coverture.
Dower in land which the husband had aliened in his life time, should not be decreed upon a doubtful right: the claimant should be required to make out a clear case.
We do not judicially know what acts were required for making an immigrant to Texas a constituent member of the Texan body politic. But we may be allowed to presume, from the history of the settlement of that country, that it was the policy of the government to invite immigration, and facilitate political affiliation with adopted foreigners. And hence, in the absence of any opposing fact, we should presume that Alsberry and wife, according to the provincial law or usage, might have become citizens of Texas before he died. And consequently, if, as may be inferred, they went to Texas with the intention of becoming citizens, we may also presume that they had done whatever was necessary for consummating that object, and had in fact become citizens, as far as their own acts and the laws of Texas could make them citizens.
The chief population of Independent Texas is composed of persons who emigrated from these United States within the last four years. In the event of a war between Texas and these states, would any of those persons, who have thus settled in Texas for the purpose of making it their permanent home, without any other proof of citizenship there, be guilty of treason for fighting under the Texan flag, against our star spangled banner? Or would not the fact of removal to and settlement in Texas, without any other or explanatory evidence, be sufficient to show, prima facie, that such persons had renounced their former allegiance to our governments, and become citizens of the new sister Republic?
It seems to us, therefore, that the facts of this case unexplained, are sufficient to authorize the presumption that Mrs. Alsberry had ceased to be a citizen of Kentucky, by becoming, in fact and in law, a citizen of Texas, prior to her husband’s death, and that consequently, in the absence of any explanatory fact or repellant presumption, we should so adjudge, at least so far as to decide that she is not entitled to the dower sought by her bill.
But if it be even doubtful whether Mrs. Alsberry had become an alien, the decree dismissing her bill, should *182 not be reversed. Seeking, as she is, relief in a court of equity, it is incumbent on her to manifest her right, and especially as Hawkins was a purchaser for a valuable consideration, and she must be presumed to have participated in the use of the price paid by him to her husband.
In the best view for her, which can be taken of the case, it is at least doubtful whether she is entitled to the dower claimed in her bill from her husband’s alienee.
And therefore, we cannot decide that the Circuit Court erred to her prejudice in dismissing her bill.
Wherefore, the decree is affirmed.