MOORE
vs
TISDALE.

---

CHANCERY.

*Case* 83.

## Moore *vs* Tisdale.

ERROR TO THE HARRISON CIRCUIT.

*Dower. Alienage.*

April 21.

JUDGE MARSHALL delivered the opinion of the Court.

The case stated.

THIS bill was filed by Martha Moore, to have her dower in a tract of land in Harrison county, of which her husband had been seized in fee, during the coverture, and which the defendant claimed by virtue of a purchase at a Commissioner's sale, under a decree which bound her husband's title. The claim of dower was resisted on two principal grounds, viz: first, that at the death of T. H. Moore, the complainant's husband, she was an alien, in consequence of her husband's having left the United States, and having become a citizen of Texas, and of her having followed him and resided there until after his death: and second, that although she had not joined in his deed of trust, nor relinquished her dower, as a party thereto, assurances had been given at the decretal sale that she would immediately relinquish her dower to the purcha-

ser, that these assurances were made by her authority, with a view to enhancing the price bid for the land, and in consequence of apprehensions then expressed on account of the dower claim, that the removal of these apprehensions, by the assurance of her relinquishment, did enhance the price, and that she did in fact, soon after the sale, her husband being then in Texas, execute to the purchaser, a separate deed of relinquishment, properly authenticated upon privy examination, and which is exhibited with the answer, and relied on as a bar.

MOORE<br>*vs*<br>TISDALE.

The bill having been dismissed absolutely, the only question for our consideration, is whether the decree is justified by any of the circumstances referred to.

I. The case of *Alsberry* vs *Hawkins*, (9 *Dana*, 177,) is relied on to defeat the claim of dower, on the ground of alienage. But though we should concede what is not entirely certain, that when the husband went to Texas in 1838, he determined to become permanently a citizen of that Republic, and to renounce his citizenship of the United States, that this determination continued till his death in 1840, and that the complainant, his wife, knowing this to be his intention, followed him to Texas, about the close of the year 1838, and continued there with him until his death, contented while she was his wife, to abide by his election of a country and a home; and though it should be farther conceded, which we need not decide, that so long as the coverture might last, and they should continue their residence in Texas, both the husband and wife might be regarded as citizens of Texas, and as aliens to the United States; still we are not prepared to admit that upon the death of the husband, the surviving wife is so bound by his election, and by such acquiescence on her part as may have been prompted by conjugal affection and duty, that her character and rights as a citizen or alien, must be irrevocably identified with those which her husband had assumed before his death. The case of *Alsberry* vs *Hawkins* does not decide that she would be thus irrevocably bound, but that the facts above stated, constitute *prima facie* evidence that the wife was an alien at the death of her husband, which was sufficient, in the absence of repellent testimony. And as in that case,

Will the removal of a wife with her husband out of the U. S. bar her of dower in lands of which he was seized during the coverture?—Qu.

MOORE
vs
TISDALE.

this *prima facie* inference received corroboration from the long continued residence of the widow in Texas after the death of her husband, and from her intention to return there. So in this case, we think the inference of alienage, arising from the facts existing at the death of the husband, may be, and is repelled by the subsequent fact, that within a few months afterwards, the widow returned to this State, where she has remained ever since, and without any intention, so far as appears, of ever again residing in Texas.

If expatriation be a matter of election, a wife who as in duty bound, has shared the lot of her husband, and abides by his choice during the coverture, ought to be allowed upon its termination, to have the privilege of electing for herself, and of fixing, by her election, not only her future, but her past character. In contemplation of law, the domicil of the husband is, and should be, the domicil of the wife. He has the right to choose, not only for himself, but also for her. And her acquiescence, however willing, should not be considered as her own free and independent act, but as the effect of that dependence and constraint which by law as well as by nature, belong to her condition. It has often been decided, that in case of a revolution, by which one portion of an empire has been separated from another, when the inhabitants of the separating portion may elect to which dominion they will adhere, infants and others under disability, though bound for the time, by the election of those having authority over them, have still the right, within a reasonable time after the disability is removed, to determine for themselves, and that a disaffirmance of the election which had been made for them, relating back, defeats, so far as they are concerned, the election itself, and fixes their character from the beginning according to their own choice, made when they had the right to choose for themselves. And the cases show that such subsequent disaffirmance may, like the original election itself, be inferred from the conduct and residence of the party, *Harrison, &c.* vs *Trimble,* (1 *B. Monroe,* 140,) and cases there cited.

The presumption of alienage arising against a wife from the fact of her removal with her husband to a foreign government, may be repelled by other evidence.

Whatever then may have been the condition of Thos. H. Moore, with regard to his political and civil rights, as dependent upon the question of allegiance and citizenship, we are of opinion, that Mrs. Moore, having shortly after his death, and within reasonable time, returned to Kentucky, and reassumed her residence and citizenship here, it should be assumed that she had merely submitted herself temporarily, and as a wife, to the dominion of Texas, without having renounced her native allegiance, that she therefore never has been an alien, and that her rights of property remain, as if instead of having been a temporary resident of Texas, she had during her absence from Kentucky, been a resident of one of the other States of the Union. She cannot, therefore, be debarred of her dower, on the ground of having been an alien at the death of her husband.

II. Upon the second objection made to the claim, two questions present themselves. The first, whether the instrument relied on by the defendant, is effectual as a release or relinquishment of the complainant's right of dower. The second, whether, though the instrument be void, and the legal right of dower unquestionable, the circumstances attending the decretal sale, followed as they were by the attempt to relinquish dower, are not such as should induce a Court of Equity to withhold its aid for the enforcement of the right, and leave the dowress to her remedy at law.

1. In considering the first of these questions, we have examined the several statutes of conveyancing, and are of opinion, that they do not confer upon a *feme covert*, the faculty of divesting herself of any freehold or fee simple interest in land, by her separate deed, made during the life of her husband and the continuance of the marital relation; and that they neither contemplate nor provide for the exercise of any such faculty. The 3d sention of the act of 1792, has been referred to in support of a contrary opinion. But were it even conceded that that section contemplated the execution of a separate deed by the wife, still, according to its plain import, it provides only for cases in which the husband had conveyed before the date of that statute, and in which, in consequence of

MOORE
*vs*
TISDALE.

—And the return of the wife to the U.S. shortly after the death of the husband, and remaining, is proof of her intention to retain her citizenship.

The statutes of conveyancing do not authorize a *feme covert* to convey a freehold or fee simple estate by a separate deed during the lifetime of her husband. The 3d section of the act of 1792, applies only to deeds theretofore made by the husband in which the *feme covert* is named.

the existing difficulties in taking and authenticating the relinquishment of dower, the deed had been recorded without such relinquishment. The two first sections provide for the future, by removing those difficulties, and the third provides for the past, by authorising the relinquishment in case of previous deeds, to be taken afterwards, and recorded in the same Court where the deeds had been recorded. Even the third section seems rather to demonstrate the general rule, that the wife should be a party to the deed with the husband, and the two first are certainly based upon that assumption. If the 3d section was intended to provide for cases where the wife was not a party to the previous deed, the enactment of that section tends to show the opinion of the Legislature, that without special provision for the case, the dower could not afterwards be relinquished by the separate act of the wife, and the whole statute tends to show, that with regard to future coveyances, the disability of the wife to affect her interest, by her separate deed, was expected and intended to continue.

It is the common law, and not the statute, that incapacitates the wife from binding herself or her lands by deed, and it is only so far as this incapacity has been removed by statute, that her deed, made in her own right, can be effectual. As all the enabling statutes, (unless the 3d section of the act of 1792 be an exeeption,) seem to contemplate and give effect to a joint deed only, and none of them have provided for the execution of a separate deed by the wife, there can be no presumption that they intended to authorize such an act.

These enabling statutes prescribe the privy examination of the wife as the means of securing her interests against an improper influence on the part of the husband, but they look to the consent and co-operation of the husband as evidenced by his execution of the joint deed, as the best protection against all other dangers; and as they provide no other, they should not be understood as dispensing with this, without express words or plain and necessary implication to that effect. But there are no such express words, and for the reason already stated, and because the separate action of the wife in reference to her

*The statutes authorizing feme coverts to convey are enabling statutes, the common law did not authorize it.*

*The execution of a deed by husband alone, implies a presumption that he did not intend the wife to unite.—ARGU.*

estate, is wholly repugnant to the principles of the common law, the implication is the other way. When the husband executes a deed purporting to be the deed of his wife as well as himself, he furnishes evidence, which may be conclusive against him of his concurrence in the act by which her right is to be affected, and perhaps her subsequent execution of the same deed at any future time, might, if properly authenticated, make it effectual as against her; for the execution and acknowledgment of the deed must be the individual acts of each.  That even in such a case, her separate deed subsequently made, during the coverture would be effectual, is not conceded. But be this as it may, the husband's execution of a deed purporting to be his separate deed, conveying his own land, tends to prove that he did not intend that his wife should execute the same deed, and leaves it entirely doubtful as a question of fact, whether he was willing that she should divest herself, in any manner, of her dower interest; and if in such a case, her separate deed subsequently made, during the coverture, should be deemed effectual against her upon the inference that it was authorized by her husband or accorded with his intention as inferred from his duty, we do not see why any separate deed of the wife should not be deemed effectual against her upon any satisfactory proof or inference that it was made with the husband's consent or in accordance with his intention or his duty.  If this were the case, the power of the wife and the efficacy of her deed might be made to depend upon parol evidence.

The absence of Moore at the date of the deed, and the fact that he was then in Texas intending to reside or to become a citizen there, can have no effect upon the present question.   His wife was at that very time, preparing, by his request, to join him in Texas.   Each acknowledged the reciprocal rights and duties of husband and wife, and the rights and duties, privileges and disabilities of that relation subsisted in full force.   We are of opinion, therefore, that the instrument of release is wholly inoperative against Mrs. Moore, and presents no bar to her right of dower, either in law or equity.

Will a Court of Equity disallow a claim of dower on account of a parol promise made to vendee, under a decree against the husband to convey? —Qu.

2. But notwithstanding the inefficacy of this instrument as a deed, and as a bar to the complainant's right of dower, still it may be a serious question whether if Mrs. Moore had authorized the annunciation made at the decretal sale, that she would relinquish her dower to the purchaser with the intention and effect of enhancing the price of the land, this circumstance should not induce a Court of Equity to refuse its aid in enforcing her claim and to turn her round to her legal remedy. We are relieved, however, from the decision of this question in the present case, because the fact of previous authority is not established. And although her subsequent execution of the deed may be regarded as in some sense sanctioning the promise which had been made, yet as the unauthorized promise of another imposed no obligation on her to make the deed if she could have made it effectually, so her execution of the void instrument, though in pursuance of the promise, did not make it more obligatory upon her conscience; and if she did not make the promise nor authorize it, the fact, if true, that it was the cause of enhancing the price, from which she received no benefit, constitutes no more ground in equity for refusing her dower, than would exist in every case where a husband gets full price for his land, by inducing the purchaser to expect that his wife will relinquish her dower. To refuse dower to the wife in such cases and on such a ground, would contravene the entire policy of the law on the subject, by allowing the husband or any other who would assume, with semblance of probability, the authority to make such a promise to bar the wife of her dower or obstruct its recovery, without any act of relinquishment or estoppel on her part. And although there may be some suspicion in this case, that the promise was authorized by Mrs. Moore, yet as the remedy for dower in chancery, as now established by practice, is the ordinary remedy, and independent of any peculiar circumstances requiring the intervention of the Chancellor in the particular case, we should not feel authorized to make so strict an application of the peculiar doctrines of the Court of Equity, as to refuse the remedy on the ground of a suspicion or uncertain inference that a claim which can only be

barred by special forms, has been rendered unconscientious by reason of mere verbal declarations of the claimant. How far these considerations might operate in a Court of Equity, even if the promise had been made or authorized by the wife, we do not decide.

The decree dismissing the bill is reversed, and the cause is remanded, with directions to allow the claim of dower set up in the bill, and have it assigned in the usual mode, by Commissioner.

*Morehead & Reed* for plaintiff: *Cates & Lindsey* for defendant.