MURRAY, &c.
*vs*
FISHBACK, &c.
signor, on the
ground that the
obligor at the
date of the as
signment held
demands against
assignee which
he might plead
as set-off against
the demand.

---

## Murray, &c *vs* Fishback, &c.

APPEAL FROM THE JEFFERSON CIRCUIT.

*Mortgages.   Lapse of time.   Execution sales.*

JUDGE MARSHALL delivered the opinion of the Court.

EJECTMENT.

Case 94.

June 6.

The case stated.

THIS action of ejectment was brought in July, 1841,
upon the joint and several demise of Isaac H., Henry,
William H., and Charles Fishback, children and heirs
of Rebecca V. Fishback, to recover upon the title de-
scended to them from their mother, 250 acres of land in
the possession of Murray and his tenants.   The land in
contest is part of 1,050 acres patented to Isaac Hite in
1785, and is one half of 500 acres devised by him in 1794,
to his daughter, Eliza R. Hite, on whose death said 500
acres descended in coparcenary, to her brother, Jacob
Hite, and her sister, Rebecca V. Fishback.   The land

had been in possession of the patentee for some years before his death, and has been held under the same patent ever since.   In 1811 a division of the 500 acres was made by Commissioners of the County Court of Jefferson, by which the 250 acres now in contest, were allotted to Mrs. Fishback, and the residue to her brother, Jacob Hite.   This division was not perfected by deeds of partition, but the parties took possession of their respective moieties, as allotted by the Commissioners, and the division then made has remained undisturbed to the present day.   In 1818, Fishback sold the 250 acres which had been allotted to Mrs. Fishback, to Murray and Ayres, at the price of $30 per acre, to be paid in sundry instalments, secured by notes of the purchasers; and a deed was then executed purporting to be the deed of said Fishback and wife, and Jacob Hite and wife, and also of Abraham Hite and Robert Breckenridge, acting executors of Isaac Hite, and to convey the said 250 acres to Murray and Ayres, who immediately entered upon the land under said deed.   After which, upon a bill filed in 1821 by Murray, the sale was rescinded, by decree rendered in January, 1824, and a re-payment to himself and the administrator of Ayres, of so much of the purchase money as had been paid, was decreed against Fishback.   An execution therefor having been levied upon the land, Murray became the purchaser at $11 25 per acre, and he and his tenants have ever since had the exclusive possession.

In 1818, shortly after the date of the deed above mentioned, Mrs. Fishback, the mother of the lessors died, and a few months before this action was commenced, their father, Charles Fishback departed this life.

I. The deed, though regularly certified as having been acknowledged by Mrs. Fishback, upon privy examination, was not recorded until 1836, and there is no evidence that it had ever been lodged for record before that time, nor does it appear where it had remained in the interval. Upon these facts the deed, as decided in the case of *Applegate* vs *Gracy*, (9 *Dana*, 215,) was ineffectual to pass Mrs. Fishback's title after the death of her husband, and

as her act, was wholly unobligatory upon her heirs, and presented no obstacle to their recovery in this action.

II. And as the deed being the act of Charles Fishback, the husband, was effectual to pass the interest of Mrs. Fishback during his life, her heirs had no right of entry until his death, and they are not barred by any statute of limitations then commencing. This principle was expressly decided in the case of *Miller, &c.* vs *Shackleford,* (3 *Dana,* 289,) and has been so repeatedly recognized in other cases as not to admit of further discussion.

III. A third ground relied on by the defendants as defeating entirely the right of recovery, grows out of a mortgage read in evidence on their part, which, purporting to be the deed of Fishback and wife, and dated in 1814, conveys to John Williamson, by way of mortgage, Mrs. Fishback's moiety of the 500 acres devised by Isaac Hite to his daughter, E. R. Hite, conditioned that if the grantors shall extinguish all incumbrances, and quiet all adverse claims to 238 acres recited as having been conveyed by them to said Williamson, and especially a mortgage executed upon a part of said 238 acres to one Fontaine, to secure him in the title of a third piece of land conveyed to him, then the said moiety of the 500 acres to revert and revest in the grantors.

Without enquiring whether this mortgage to Williamson is sufficiently authenticated as the deed of Mrs. Fishback, or whether even if it is, and if it were still in force and vested a present right of entry in the mortgagee, it could be set up as a defence in the present case, we are satisfied that the mortgage presents no obstacle to the plaintiff's recovery. 1st. Because the proof that the 238 acres sold to Williamson, and the parcel sold to Fontaine, had both been held in possession under the title conveyed, for from 30 to 50 years, renders it reasonably certain that there can be no case requiring the indemnity provided by the mortgages, and that whatever incumbrance or adverse title there may have been upon either of those tracts, has been extinguished, so that the title, according to the terms of the mortgage, re-vests. And, 2d. Because even conceding that a case might possibly arise for the active enforcement of the mortgage to Wil-

MURRAY, &c.
*vs*
FISHBACK, &c.

A mortgage to secure title to lands conveyed, will be presumed to have been released after the land conveyed had heen enjoyed for from 30 to 50 years.

liamson, and that it cannot, therefore, be regarded as extinct, still no such case has yet arisen, and as it is entirely clear that the mortgagee is not entitled to enter upon the mortgaged land, while he holds in undisturbed and unthreatened enjoyment the other tract, which the mortgage was intended to secure to him, and it is manifest upon the face of the mortgage that the possession was not to be taken from the mortgagor until the loss should happen for which the mortgage furnishes an indemnity, it follows that the mortgagee himself could not recover the possession from the mortgagor, upon the facts now existing; and *a fortiori*, the mortgage could not be set up even by a stranger, to defeat the mortgagor's recovery, and much less by one claiming under the mortgagor, by a defeasible act subsequent to the mortgage.

. IV. It was proved on the part of the defendants, that

*Lands vested in a citizen are not forfeited by a removal to a foreign country*

eight years after the death of Mrs. Fishback, which was after the death of all her children except the present lessors, and of course after her reversionary interest in the land expectant on her husband's death, had vested in the lessors as her only heirs, one of them, Isaac H. Fishback, left Kentucky, and settled, as he supposed, in Arkansas, but that on running the line between the United States and Texas, it was found that he was within the boundaries of Texas, and that he has since removed farther into the interior, and still resides in that Republic. On these facts it was contended that there could be no recovery to the extent of the interest which had descended to him. But although it is a common law principle that lands cannot pass by descent to an alien, it has never been decided, and we are not prepared to admit, that land or a right to land already vested by descent in a citizen of Kentucky, is *ipso facto*, forfeited or otherwise lost by his removal to a foreign country, and continued residence there, though it be for the purpose and with the effect of expatriation. Lands purchased by an alien born, are not forfeited without office found; and even if Isaac H. Fishback should, upon the facts stated, be adjudged to have voluntarily expatriated himself, and to have become an alien so far as his civil rights are concerned, still it would not follow that his lease of land to which he had

a vested right while a citizen, would be void, or that his lessee could not recover. Such a consequence is negatived by the case of *Brooks, &c.* vs *Clay,* (3 *A. K. Marshall,* 549,) and especially by the terms in which that case is recognized in *Alsbury* vs *Hawkins,* (9 *Dana,* 179.) And we think the recovery could not properly have been limited on this ground.

V. A more serious objection going also to limit the extent of the recovery, is based upon the fact that Jacob Hite, who was co-parcener with Mrs. Fishback of the 500 acres descended from their sister, E. R. Hite, united in the deed purporting to convey 250 acres thereof, the part now in contest, to Murray and Ayres; and as there had been no previous deed of partition or release between the parties, it is contended that notwithstanding the division in fact adopted and acquiesced in by them, the title to one undivided half of the 250 acres conveyed by the deed had remained in Jacob Hite, and passed from him to Murray and Ayres, that it never vested in Mrs. Fishback, and therefore, never descended to her heirs, and that consequently they are entitled to recover no more than one half of the land. But if the sale to Murray and Ayres had never been set aside, and the question now made were to be determined upon the construction and effect of the deed, we should be of opinion that the conclusion just stated, could not be allowed; for however ineffectual the actual division might have been to produce a technical severance of the title, this deed itself contains such a confirmation of the division, and such an assertion and admission of title in Mrs. Fishback, as would seem to forbid Hite or any person claiming under him, from setting up any title in him, or derived from him as co-parcener, in opposition to her title as recognized and professed to be conveyed by the deed. The deed itself shows that the land was sold, and purchased, and conveyed, and to be paid for as the land of Mrs. Fishback exclusively. It contains the covenant of Fishback and wife alone, that they were seized in fee, and had right to sell, and that they would warrant and defend the land, which it expressly states to be Mrs. Fishback's part of the 500 acres, while it states also, that the other part belongs to Jacob

A division between two parceners is made by County Court Commissioners, and possession taken and held under it, though no deeds are made, one sells to a third person the other parcener unites in the deed and release. Held that no title passed from the releaser who gave no warranty.

Hite, and that he unites in the deed only for the purpose of releasing.

According to the recitals and general tenor of the deed, by all of which Jacob Hite would have been bound as a party, though he had used no words of conveyance or release, he had no title in the 250 acres intended to be conveyed, and no formal release or conveyance from him was necessary to invest the grantees of Fishback and wife with a perfect title. He released, not with an assertion of title, but under a disclaimer. And it is obvious that the sole consideration or inducement for his execution of the deed, was that the division might be confirmed, and his title to the 250 acres allotted him made perfect, as it would have been by the conveyance of the 250 acres now in contest as the land of Mrs. Fishback, by a deed obligatory upon her and her husband and himself. For by such a deed, though containing no mutual release, each of these parties would have been precluded from claiming any thing in the part admitted to belong to the other. But by the fault or negligence of the grantees, Murray and Ayres, and of them alone, so far as appears, the deed is not obligatory as the act of Mrs. Fishback, and constitutes no estoppel as against her heirs. It therefore, does not, by its own force, furnish the intended security to Jacob Hite; and as the heirs of Mrs. Fishback could not be deprived of their half of the 500 acres by the act of their father and Jacob Hite, then if Murray and Ayres should be considered as deriving title to one fourth of it from Jacob Hite, and should be allowed to repel the recovery of one half of the 250 acres sued for on the ground that as to that portion they have his title by grant or release, it would follow that as he never had title to more than half of the entire 500 acres, and as his title had been made available against that derived from Mrs. Fishback as to one half of the 250 acres now in contest, it must yield to that title as to one half of the other 250 acres; so that his interest would, in effect, be reduced from one half to one fourth, unless his release, though available against the heirs of Mrs. Fishback, should be deemed unavailable as against him, which could not be.

It would certainly be more consonant with the intention of the parties, the nature and objects of the transaction, and the justice of the case, to say that the formal words of conveyance or release from Hite to Murray and Ayres, which were unnecessary, were also inoperative, or at any rate 'that they operated no farther than the estoppel on which they were founded was operative, and that they passed no independent title or estate to Murray and Ayres, which could be separated from or brought in conflict with the title professedly conveyed by Fishback and wife; that whatever interest passed from Jacob Hite to Murray and Ayres, by his release to them passed virtually through Fishback and wife, from whom alone any consideration for the release had moved, and was incidental to and dependent upon the estate derived from them by the deed, that whenever the deed ceased to operate as a transfer of Mrs. Fishback's interest, it also ceased to operate as a transfer of Jacob Hite's interest, and that as the deed even if unrescinded, would have ceased to operate upon the former interest, upon the death of Fishback, it could not have carried the latter after that event.

But if the release of Jacob Hite cannot be thus limited in its effect, and if, notwithstanding, the cessation of the deed as a conveyance of Mrs. Fishback's interest, it should still be deemed effectual as a continuing and permanent transfer of Jacob Hite's interest as co-parcener in the 250 acres to Murray and Ayres, still it is certain that these grantees purchased the whole 250 acres from Fishback, as his wife's part of the 500 acres, that the possession had been held in her right exclusively, that the land was conveyed as hers, and the entire possession delivered and received under her title. It is upon these facts that the release of Hite to Murray and Ayres operates as such; and as upon these facts they would have been estopped if Hite had not united in the deed, from setting up his title either remaining in himself or subsequently acquired by them, against Mrs. Fishback or her heirs, after her husband's death; *Drane* vs *Gregory's heirs,* (3 *B. Monroe,* 619;) *Smith* vs *Shackleford,* (9 *Dana,* 475–6; 4 *Dana,* 286–7, &c.) We think the estoppel, so far from being weakened by the fact that Hite

MURRAY, &c.
vs
FISHBACK, &c.

released in the same deed by which Fishback conveyed, is made stronger and more manifest by that fact, taken in connection with the terms of the deed. For while a conveyance from one co-parcener might be open to the inference that an undivided interest only was intended to pass, this deed shows conclusively that the whole 250 acres were purchased and conveyed as the exclusive property of Mrs. Fishback, and that Hite released to Murray and Ayres instead of releasing to Mrs. Fishback, not because they were purchasers from him or of his interest, but as purchasers and supposed grantees of Mrs. Fishback's interest under her exclusive claim to the entire tract described in the deed. The release was obviously intended to perfect her title in her grantees, and not to place in them any title adverse to hers. It was made in consideration of her interest in the other 250 acres, and to complete her title in this tract; and if it cannot operate directly as giving title to her or her heirs, against her husband's grantees, it certainly cannot relieve them from the estoppel which binds them as the purchasers and grantees of the land under her title as conveyed by her husband, to acknowledge that title and restore the possession which they acquired under it, when by the death of Fishback, their interest in it has ceased. Under these views we are satisfied that the deed furnishes no ground of defence even if Murray could have set it up as a subsisting deed. But as upon his own bill, the contract of sale, of which there does not appear to have been, at any time, any written evidence but this deed, was decreed to be rescinded, set aside, and held for naught, and as he afterwards purchased the land and still holds it under an execution against Fishback alone, we do not perceive that he could afterwards claim any title or interest under this deed, or that it could be used by either party except as evidence of a past transaction, showing the manner in which the possession of the land in contest was originally transferred from Fishback and wife to Murray and Ayres. Its effect in this point of view is favorable to the plaintiffs, and has been sufficiently noticed.

VI. We come then, to the last ground of defence which it is deemed necessary to state. And that is, the Sher-

iff's sale and conveyance under the decree of rescission, whereby it is contended, that Murray acquired the title not only of Fishback, but also of two of the lessors of the plaintiff, heirs of Mrs. Fishback, who were parties to the suit in Chancery. But on looking into the proceedings and decree in that suit, and the executions under which the sale was made, we are satisfied that nothing passed by the Sheriff's sale and deed, except such interest as Fishback himself had in the land as tenant by the courtesy; that Murray's possession under that sale and deed, has been held under the title descended from Mrs. Fishback, and by virtue of a sale and conveyance of her husband's interest therein; and that Murray was under the same obligation to restore the possession to her heirs when his interest in her title ceased by the death of her husband, as if he had continued to hold that interest under the immediate personal grant of Fishback himself. To sustain this conclusion as to the extent of the interest acquired under the decree, it might be sufficient, to state, that it was made under executions which issued against Fishback alone, for so much of the purchase money as had been paid by Murray and Ayres respectively, and the sale being made by the Sheriff in the ordinary way, under executions for the satisfaction of a money decree against Fishback alone, no title was or could be sold but that of the defendant in the execution.

The decree, after settling the amounts to be repaid to Murray and the administrator of Ayres, goes on to provide that they shall respectively have executions therefor against the said Charles Fishback, the elder, "to be levied, first of the estate of said Fishback, and if that is insufficient, then the 250 acres of land, or so much thereof in the bill mentioned, as shall be sufficient, shall be sold to satisfy such execution or executions." Executions issued commanding the Sheriff to make the sums decreed, "of the estate of Charles Fishback, the elder, and if that is insufficient, then of a certain tract or parcel of land, containing 250" &c. describing specially the land now in contest, and a similar direction was indorsed on the execution by the clerk. The Sheriff returns that he levied the executions on the 250 acres of land, "the defendant,

MURRAY, &c.
vs
FISHBACK, &c.

The husband, tenant by the courtesy, sold land of the wife, the contract is rescinded, and the land sold to pay the consideration given under execution against the husband—held that only the estate of the husband passed to the purchaser.

Charles Fishback, the elder, having no other estate in my county, known to me." No sale having been made upon these executions, two writs of *venditioni exponas* issued, commanding the Sheriff to "expose to sale that estate of Charles Fishback, the elder, to the value, &c. to wit: a certain tract or parcel of land, containing 250 acres," &c. describing it minutely, "which according to our command you have taken into your hands," &c. "or so much thereof as shall be sufficient," &c. And upon these writs the sales were made, and Murray became the purchaser. The Sheriff's deed, which recites these proceedings, and is made in pursuance of them, could not convey a greater interest than was sold, and does not profess to do so. And not only does the restriction of the sale to the interest of Charles Fishback, the elder, follow as a proper consequence, from the fact that he was the only debtor by the decree, and that the execution was against him alone, but such restriction is expressly indicated by the terms of the *venditioni exponas*, which directs the Sheriff to sell the estate of Charles Fishback, the elder, which he had taken, to wit: the tract of land. And the return upon the first execution, allows, if it does not require the construction, that the land had been taken as the estate of said Fishback.

It is contended, however, that the decree directs a sale of the fee simple estate in the land, under the executions ; that all who were parties to the suit are bound by the decree, and that consequently, such title as any or all of them had, passed by the sale under the decree. So much of the decree as has any bearing upon this subject, has been already quoted. There is no intimation in any other part of the decree, that any one but Charles Fishback, the elder, owes or is in any manner liable for the sums decreed against him, or that the property of any one else is intended to be, or ought to be subjected to their payment. And although the bill prays that the complainant may have a lien upon the land for the purchase money, yet it expressly shows that Charles Fishback, the elder, was the sole vendor of the land, and the sole recipient of the purchase money, and neither the bill nor any other part of the pleading or evidence, lays any ground for ex-

tending the liability for its re-payment, to any, other person but him, or to any other property but his.  It is true, Jacob Hite, and Charles Fishback, Jr., and Henry Fishback, are made defendants, but evidently not because they had, or were supposed to have any interest in the land, and not for the purpose of subjecting any such interest.  The primary object of the bill, is to injoin a judgment on one of the notes for the purchase money.  It alledges that Charles Fishback, Sr. had assigned that note to Jacob Hite, to secure a debt of about £60, and to hold the residue for the benefit of his, Fishback's, two sons, Charles and Henry.  And upon this allegation, they are made defendants, manifestly on account of their interest in the judgment sought to be injoined, and not because they had an estate in the land.  It is not even suggested that they have such estate.  They are not sued as heirs of Mrs. Fishback.  It is not even stated that they were her heirs, or her children, and of course there is no suggestion that they are her only heirs or her only children.  There were, in fact, six of her children and heirs living at the commencement of the suit, of whom all were living at the date of the decree except one, who had died within twenty days before its rendition.  Under these circumstances, it should certainly require more than the doubtful inference arising from an awkwardly expressed sentence in the decree, to authorize the conclusion that the Chancellor intended, (even if he had pursued the ordinary mode in which the property of one person is subjected to the satisfaction of the debt of another, for which it is liable in equity,) to order peremptorily the sale of the estate which these heirs, or any of them, had inherited from their mother, for the satisfaction of their father's debt.  But the construction of the decree, as conteded for by the defendants, would not only make the Chancellor order such sale, without any premises laid therefor, either in the decree or in any part of the suit, but would make him order it under a writ of *fieri facias*, the form and effect of which, as an instrument for the execution of judgments and decrees, are prescribed by statute, and are such as to limit its operation to the estate of the person against whom the judgment or decree is rendered, and

MURRAY, &c.
vs
FISHBACK, &c.

against whom the writ itself issues. Doubtless the Chancellor, in authorizing executions to issue for the money decreed, meant the usual execution, by writ of *fi. fa.* and no other.   But there is no intimation that he intended to change the form of the writ, nor is there any sufficient indication of an intention to enlarge its effect, by directions to the Sheriff as to the manner of executing it, nor are we prepared to admit that he had power to do either.

The very fact of adopting the writ of *fieri facias,* for executing the decree for money, limits the mode of execution to a seisure and sale of the debtor's estate, and shows that whatever may have been intended to be done upon the ascertained deficiency of that estate, was not intended to be done under the execution, which was to issue against Charlas Fishback, the elder, and which was to be levied only upon his estate, but was to be done under the future action of the Court.   There is no direction to levy upon the 250 acres at all, unless it be in the direction to levy on Fishback's estate.   There is no direction, that in case his estate should prove insufficient, the 250 acres should be sold under the executions which were direted to be levied on his estate, or under any others.   There is nothing more than a monitory statement, not binding upon the Court, and certainly confering no authority upon its officers, nor in any manner addressed to them, that upon the contingency referred to, the 250 acres should be sold for the satisfaction of the executions, that is, of the sums decreed.

There is in the sentence of the decree, which has been quoted, an apparent discrimination between the estate of Charles Fishback, the elder, on which the executions were directed to be first levied, and the 250 acres of land, which in case of the insufficiency of that estate, the decree says shall be sold, which may have been founded on the idea that his interest in the 250 acres, was not then in a condition to be the subject of levy and sale under execution, and that it could only be sold by the direct action of the Chancellor.   Upon this supposition, the substantial import of this part of the decree is, that executions shall first issue and be levied on Fishback's estate, (exclusive of the land,) and if the decree should not be thus

satisfied, the Court would proceed to subject the land to its satisfaction. In doing which, the Court would not only have been at liberty, but bound to say whose interest, and what estate in the land it was subjecting to sale. But whether the Chancellor may have intended to exclude from the levy Fishback's interest in the land, and to reserve that or the whole fee simple for future sale, or to include that interest in the levy, and afterwards, if necessary, to sell some other interest in the land for his debts, it is unnecessary to determine, and would be useless to inquire. Upon any hypothesis, no other estate but that of Charles Fishback, the elder, could have been sold under the executions, and it cannot be presumed, nor is it the necessary implication from the language of the decree, that any other was intended to be thus sold. Nor, although we are inclined to think, that as the deed of Fishback, &c. was not recorded, and as it was by the decree rescinded and made of no effect, his interest in the land as tenant by the courtesy, was liable to levy and sale under execution, is it necessary to decide that point. Murray, who procured the decree of rescission, who had the land sold, and purchased it under the executions against Fishback, and who has held the possession in virtue of that purchase, during the entire continuance of Fishback's interest, and until the present time, cannot now set up the deed to show that Fishback had no vendible interest, nor say that he did not acquire that interest by the Sheriff's sale and deed. If he did not acquire that interest he acquired nothing. And were it conceded that the entire sale might have been avoided, it is in fact confirmed beyond question, to the extent of Fishback's interest, and to that extent should be deemed valid. ·

In answer to the suggestion, that the Sheriff may be regarded as the Commissioner of the Court, in making sale of this land, and that the effect of his sale should not be limited by the authority derived from the executions, but carried other interests than that of the defendant in the executions, it is sufficient to say, 1st. That whatever opinion or intention may be inferred as to the liability or future subjection of such other interests, there is no decree authorizing a sale of them, without the further action

of the Court; and certainly no authority conferred upon the Sheriff to sell as Commissioner, for the Sheriff is not named or referred to in the decree, and had no power to act but in consequence of receiving the executions, and in virtue of their command, as authorized by law. And 2d, that even if the Sheriff had been formally named as Commissioner, with direct authority to sell the fee simple estate in the land to whomsoever it might belong, still his sale and deed as Commissioner, would have been inoperative to pass the title, even of those who were parties to the suit, until reported to and approved by the Court, which was never done in this case; and plainly because the Sheriff was not Commissioner, and did not act as such, but acted as Sheriff merely, under the legal authority conferred on him by the executions.

Upon the whole case, we are of opinion that the Court properly instructed the jury to find for the plaintiffs. And therefore, the judgment is affirmed.

*Guthrie and B. & A. Monroe* for appellants: *Loughborough and Pirtle* for appellees.