White vs. White.

CASE 38—JULY 7.

# White vs. White.

2me185
92   75

2me 185
j124  504

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. At common law an alien could not take land by inheritance. This law is still in force here, except as it has been modified by statutory enactments.

2. Where the decedent's death occurred before the adoption of the Revised Statutes, the capacity of one claiming to take by descent, as well as the right of the Commonwealth in the event of there being no person to inherit, must depend upon the pre-existing law.

3. An alien to inherit land under the act of 1800 must have had two years' residence in the State, and have resided here at the time of decedent's death.

4. An alien who has taken the preparatory oath to become a citizen of the United States, is not thereby rendered capable to take lands by descent; and his subsequent naturalization cannot operate to invest him with the title, which in the meantime has vested in the Commonwealth.

5. A widow whose husband died intestate and without issue, in an action for the recovery of land against those claiming it as heirs at law of her husband, alleges that they and *all the relations* of her husband were *foreigners by birth* and aliens at the time of his death, and that none of them were residing in the State at that time. The answer denied that they were aliens at the time of his death, but failed to deny that they were foreigners by birth. *Held*—That being foreigners by birth they were *prima facie* aliens, and it was for the defendant to show that some of them were naturalized citizens, and capable of inheriting from the decedent at the time of his death.

6. Naturalization is a personal privilege, and the alien wife does not become a naturalized citizen by the naturalization of the husband.

7. By the law prior to the adoption of the Revised Statutes, the alienage of the wife rendered her incapable of inheriting from her husband, and also barred her right of dower. (9 *Dana*, 177.)

8. The title to land as to which the owner dies intestate, without legal heirs, vests by operation of law in the Commonwealth, and is complete "without office found."

9. A conveyance by the Auditor made under a special act of the legislature authorizing him to release to the widow of a decedent all the right and title which the State had acquired to a lot of land owned by the decedent, in consequence of his death without heirs capable of inheriting it, is not void under the law against champerty, but passed the title of the State to the grantee, although the land may have been adversely possessed.

10. Although the act of the legislature *supra* contains a provision that nothing therein contained shall affect any right which any other person may lawfully have to said property, one having no lawful right thereto cannot invoke the aid of that provision to protect a possession wrongfully acquired.

J. R. Hallam, for appellant, cited *Co. Litt.*, 33, 129, 268 ; 2 *Blackstone*, 245 ; 3 *Stat. L.*, 229 ; 1 *Stat. L.*, 560 ; 1 *Greenleaf Ev.*, sections 78–81 ; 1 *Eden*, 177, 261 ; 1 *Stat. L.*, 620 ; *Rev. Statutes*,

307; 2 *B. Mon.*, 400 ; 4 *Bibb*, 425 ; 3 *J. J. Mar.*, 552 ; 6 *Ib.*, 493 ; 7 *Cranch*, 603 ; 1 *Gill, Md.*, 430 ; 2 *Har. & McHen.*, 121 ; 6 *Mon.*, 260 ; 9 *Dana*, 178 ; *Vattel, p.* 104 ; 2 *Woodbury & Minot*, 1 ; 1 *Blackstone*, 250, 374 ; 1 *Strobhart, S. Car.*, 295 ; 8 *Blackford*, 246 ; 1 *Johns. Cas.*, 399 ; *Atkinson on Titles*, 538–9 ; *Rev. Stat.*, *page* 172 ; *Ib.*, 173, *sec.* 2 ; 6 *B. Mon.*, 365.

ROOT & WEBSTER, for appellee, cited *Hardin*, 61 ; 1 *Litt.*, 149 ; 7 *Mon.*, 143 ; 2 *Dana*, 40 ; 1 *B. Mon.*, 141 ; 6 *John. Ch'y R.*, 361 ; 6 *Peters*, 113, 118 ; 20 *Pick.*, 121 ; 7 *Rich. (S. C.) Law Rep.*, 349, 350, 351 ; *Act of Congress (naturalization) of* 1824, *and sec.* 1 *of* 1802 ; *Rev. Stat., p.* 172–3 ; 20 *Pick.*, 127 ; 3 *Stat. Law*, 31 ; 1 *Stat. Law*, 112 ; 1 *Greenl. Cruise on Real Property, title* 1, *chap.* 3, *sec.* 39, *note;* 1 *B. Mon.*, 146–7–8 ; 9 *Dana*, 177 ; 1 *Cow.*, 89 ; 5 *Ib.*, 713 ; 16 *Wend.*, 617 ; 3 *Litt.*, 480–1 ; 7 *Mon.*, 143 ; 6 *Mon.*, 630 ; 16 *Pick.*, 177–8–9 ; 3 *J. J. Mar.*, 598 ; 18 *Ala.*, 572–3, 575 ; 7 *Watts*, 458–9.

CHIEF JUSTICE SIMPSON DELIVERED THE OPINION OF THE COURT:

This controversy involves the question of the superiority of the right of the respective claimants to part of lot No. 105 in the original plan of the city of Newport. This lot belonged to Roger C. White in his lifetime, who died in May, 1851, in Cincinnati, Ohio, where he resided at the time of his death. He was a native of Ireland ; but a naturalized citizen of the United States at the time he purchased the lot in contest. He died intestate and without issue, leaving a widow, and also a mother, two brothers, and a sister, all natives of Ireland, but residents of Ohio.

After his death, his brother William White took possession of the lot of land in dispute, who having in July, 1852, obtained a deed of conveyance therefor from his mother, brother, and sister, claimed it as his own at the time this action was commenced. William White had, before the death of his brother, made a declaration of his intention to become a citizen of the United States, but was not naturalized until May, 1854.

This action was brought by Ann White, the widow of the deceased. She claims the lot in contest as widow, on the ground that her husband at the time of his death had no heirs capable of inheriting it. She also claims it under a deed exe-

cuted to her by the Auditor of this State, by virtue of an act of the legislature authorizing and empowering him to make such a conveyance.

The defendant, William White, claims it as heir at law, upon the ground that having, previous to his brother's death, declared his intention to become a citizen of the United States, and taken the preparatory oath for that purpose, he thereby became capable of taking by descent from his brother. He denies the plaintiff's right to recover on the Auditor's deed, even if the decedent died without heirs, because, as he contends, the title of the Commonwealth was incomplete until entry was made, or an inquest of office found; and if it were complete, still the title did not pass to the plaintiff by the Auditor's deed, which was inoperative under the statute against champerty, inasmuch as he was in the adverse possession of the land at the date of the deed.

The plaintiff, Ann White, having recovered a judgment for the lot of land in contest in the court below, the defendant has appealed to this court.

The first question to be decided in this case is the right of the appellant to take by descent from his brother; for if he could take by descent, then the plaintiff's claim as widow, which is based throughout on the idea that her husband had no heirs capable of taking by inheritance, falls to the ground, and cannot be sustained.

At common law an alien could not take land by inheritance. This law is still in force in this State, except so far as it has been modified by statutory enactments. It was decided by this court, at a very early period, that aliens could not inherit lands in Kentucky. (*Hunt vs. Warnicke's heirs, Hardin,* 61.)

As the decedent died before the adoption of the Revised Statutes, the capacity of the appellant to take by descent, as well as the right of the Commonwealth, in the event that there was no person to inherit, must depend upon and be governed by the pre-existing law.

By an act passed in 1800 any alien, other than an alien enemy, who shall have actually resided within this Commonwealth two years, is enabled to receive, hold, and pass any

right or title to any land within the same, during the continuance of his residence after that period. As, however, the appellant did not reside in this State at the time of his brother's death, he was not entitled to the benefit of the provisions of that statute, and cannot hold the land in contest under the privilege which it conferred. He insists, however, that he was rendered capable to take by descent, in consequence of having taken the preparatory oath to become a citizen of the United States.

The argument by which this position is attempted to be maintained is, that when a native of any foreign country comes into the United States, and makes, according to the act of congress, a declaration of his intention to become a naturalized citizen, he is no longer an alien; and although he does not thereby become a citizen of the United States, yet having divested himself of the character of an alien, he can take lands by descent, inasmuch as it is only as an alien, and in that character, that he is rendered unable to inherit.

But the inquiry naturally arises, what attitude does such a person occupy if he be neither an alien nor a citizen? To meet this obvious inquiry, it is said that although he is not a denizen, strictly speaking, yet he is placed on an equality with a denizen at common law, and as such made capable of taking by descent.

A denizen was created at common law by letters patent. He was not entitled to all the rights and privileges of naturalization, which could only be conferred by an act of parliament.

We, however, have no law by which an alien can be constituted a denizen. The acts of congress relate exclusively to naturalization, and only prescribe a rule by which an alien can become a naturalized citizen. The State legislature, having the power to designate the persons who shall inherit, might have conferred the right to do so on an alien who has taken the preparatory oath and declared his intention to become a citizen of the United States. No such law, however, has been passed, and the right claimed, if it exist at all, must be conferred by the acts of congress on the subject of naturalization.

Whatever may be the political effect of a declaration of intention to become a citizen of the United States, and what-

ever may be the extent to which an alien will thereby become entitled to the protection of the federal government, we think it is very obvious that, as to many *civil rights*, he still remains under the disability of alienage.    He is, except so far as personal protection is concerned, still an alien, and is so regarded by the acts of congress, until, in pursuance of the rule they prescribe, he has been made a naturalized citizen.    By making a declaration of his intention, he only takes a preliminary step to the attainment of the object he has in view, for the full accomplishment of which he is compelled to wait the prescribed period of time.    He does not thereby remove the disability which he labors under as an alien, to take lands by inheritance, nor is such disability removed in this State until he has resided therein for a period of two years, or has become a naturalized citizen under the acts of congress.

It appears that the appellant had taken the final oath and become a citizen of the United States before the commencement of this action.    It is, therefore, contended that his title to the land sued for had become good by *relation*, even if he were incapable of inheriting at the time of his brother's death.

An alien can take lands by purchase, though not by descent, at common law; or, in other words, he can take by act of the party, but not by the act of law.    Lands acquired by purchase he can *hold* until divested of the title by inquest of office. (*Elmondorf vs. Carmichael*, 3 *Litt.*, 474.)    The consequence of this rule is, that if he be naturalized before office found, his title as purchaser becomes valid by *relation*, and it cannot be thereafter divested.    This doctrine, however, does not apply to lands claimed by descent.    Not being capable of taking by descent, he has no title to be confirmed by relation, and his subsequent naturalization cannot operate to invest him with the title, which, in the meantime, has become vested elsewhere.

An alien can receive the title to land which he acquires by purchase, and being invested with the title, he can hold it until he be deprived of it in the mode prescribed by law.    But as he is incapable of inheriting, he cannot take the title to lands by descent, and as the title must vest somewhere, it vests in the Commonwealth by operation of law, where, as in this

case, the decedent leaves no kindred capable of inheriting. As, then, the title to the property in contest did not vest in the appellant on the death of his brother, but in the Commonwealth, it follows that the title was not affected by his subsequent naturalization, which could not operate to divest the Commonwealth of the title previously acquired.

The deed executed to the appellant by his mother, brother, and sister, conferred no title upon him, inasmuch as they were aliens also, and could not take by descent.

Under our statute directing the course of descents, where the husband dies intestate, and has no kindred capable of inheriting his real estate, the whole of it goes to his wife. The plaintiff's right as wife is, however, contested in this case on two grounds. First, that she has failed to establish the fact upon which the right of the wife depends; that is, that her husband had no kindred capable of inheriting his lands at the time of his death; and in the second place, that she is herself an alien, and as such incapable to take by descent the title to the lot of land in contest.

1. The plaintiff alleged in her petition that the mother, brothers, and sisters, and *all the relations* of her husband were *foreigners* by birth, and aliens at the time of his death; and that none of them were residing in this State at that time. No part of this allegation was denied by the defendant except that part of it which charged that he and his mother, brothers, and sisters, were aliens at the time of her husband's death. As, however, he admitted, by failing to deny that part of the allegation, that they and all the decedent's relations were foreigners by birth, it devolved on him to make it appear, if the fact were so, that some of them were naturalized citizens and capable of inheriting from the decedent at the time of his death. Being foreigners by birth, they were *prima facie* aliens, and the plaintiff was not bound to prove that they were aliens, although it was denied, but it was incumbent on the defendant to show that they were citizens of the United States, and not aliens. Not having done so, it must be assumed that the husband at the time of his death had no kindred capable of taking his real estate by descent.

2. The wife herself was an alien, and had never been naturalized, unless the naturalization of her husband had that effect.

The act of congress to establish an uniform rule of naturalization, approved April 14, 1802, provides that the children under the age of twenty-one, of persons duly naturalized, shall, if dwelling in this country, be considered as citizens of the United States. But the wives of such persons were not embraced by that provision, or by any other contained in that act. By the act of congress approved March 26th, 1804, it is provided that when an alien who shall have, under oath, declared his intention to become a citizen of the United States, in the manner prescribed by law, may die before he is actually naturalized, the *widow* and children of such alien shall be considered as citizens of the United States, and shall be entitled to all rights and privileges as such upon taking the oaths prescribed by law. Under this last act the widow, when the circumstances therein mentioned occur, can become a naturalized citizen by taking the final oath. She is entitled to the benefit of the preparatory oath which her husband made in his lifetime, but still is required to take the oath prescribed by law, to entitle her to be considered as a citizen of the United States. This act cannot, however, be so construed as to confer upon the wife the right to be considered as a citizen when her husband has been naturalized, although it authorizes the inference that congress supposed she was entitled to that right under the previous act, and intended to secure it to her, notwithstanding the death of her husband before he became a citizen.

Naturalization is a personal privilege, and the alien wife does not become a naturalized citizen by the naturalization of the husband. The acts of congress do not impart to it that effect, nor are we apprised of any law which, at the time of the decedent's death, conferred upon his wife the right to take real estate by descent, in consequence of his naturalization, although such a right has been since conferred upon an alien wife whose husband is a citizen of the United States, by the Revised Statutes, (*page* 173.) The alienage of the wife rendered her incapable of inheriting from her husband, and also barred her right of dower. (*Alsberry vs. Hawkins*, 9 *Dana*, 177.)

It only remains to consider the validity of the deed of conveyance which was made to the widow by the Auditor, under the act of the legislature passed for that purpose.

· Its validity is controverted on two grounds. First, that the title did not vest in the Commonwealth, as there was no inquest of office; and second, that the defendant having adverse possession of the land, the deed is void under the law against champerty.

1. The act of 1840 (*Session Acts of* 1839-40, *page* 47) provides expressly that the "*estates*" within this Commonwealth, as to which the owners might die intestate, without legal heirs or distributees, should vest in the Commonwealth, "without office found." This act clearly embraces land as well as personal property. The term "estates" is sufficiently comprehensive in its meaning to embrace all kinds of property, and was no doubt so intended by the legislature. But even, prior to the passage of this act, it was decided by this court that lands in this State do not descend to heirs who are aliens, but vest in the Commonwealth without office found. (*Stevenson and wife vs. Dunlap's and Blight's heirs*, 7 *Mon.*, 143; *Fry and Vaughn vs. Smith*, 2 *Dana*, 40.)

This result necessarily ensues from the incapacity of alien heirs to take the title by descent. The law does not permit the title to remain in abeyance, and in default of heirs it is cast upon and vests in the Commonwealth by operation of law. Consequently the title to the lot of ground in contest, upon the death of the owner, vested in the State, and was complete, without office found.

2. We are not ready to admit that the law against champerty has any application to grants or conveyances made by the State. We do not, however, deem it necessary to decide this question in the present case. The conveyance was authorized by a special act of the legislature. That act operated as an implied repeal of the champerty law *pro tanto*, and authorized the title to be conveyed to the widow, although the land may have been adversely possessed. The act has the same effect that it would have had if it contained an express provision that the title should pass to the grantee in the deed, not-

withstanding the law against champerty. It authorized the Auditor to release to the widow of the decedent all the right and title which the State had acquired to the lot of land in contest, in consequence of the death of her husband without heirs capable of inheriting it. This object could not be accomplished if an adverse possession was sufficient to render the deed inoperative. Consequently the act must be construed as imparting to the conveyance, when made, such efficacy as was necessary to accomplish the intended object, without any regard to the pre-existing law. The legislature had the power to repeal the champerty law altogether; and, therefore, there can be no doubt of its power partially to repeal it. Such must be the effect of the act in question; otherwise it would be wholly nugatory and inoperative. It contains, it is true, a provision that nothing therein contained shall affect any right which any other person may lawfully have to said property. The appellant, however, had no lawful right to the property, and cannot invoke the aid of that provision to protect a possession wrongfully acquired.

The legislature has the power to prescribe the mode in which a grant or conveyance of the title of the State to land or other property shall be made; and when it is made in the mode prescribed by the legislature the title vests in the grantee, according to the legislative intention.

The Auditor's deed, therefore, invested the plaintiff in the action with the legal title to the lot of ground in contest, and the judgment in her favor was proper.

Wherefore, the judgment is affirmed.