9   559
34   86

9   559
f61   332

# CHARLESTOWN.

STATE OF WEST VIRGINIA *v.* JOHN CAIN.

October 31, 1876.

9   559
65   145

1876.
August Term.

1, An indictment founded upon the third section of chapter ninety-nine of the acts of the Legislature of 1872-3, charging that C. on the first day of December, A. D. 1873, in Wood county, unlawfully did sell intoxicating liquors to one Michael Toole, a minor, under the age of twenty-one years, he, the said C., knowing the said Michael Toole to be a minor, and not having the written order of his parents, guardians, or family physician therefor, contrary to the form of the statute in such case, made and provided, and against the peace and dignity of the State; held good after verdict, upon a motion in arrest of judgment.

2. On the trial of such indictment, it is competent and not improper for the minor to state on his examination as a witness on behalf of the State, upon his oath, his age to the jury, with the view of proving that he was a minor at the time of the sale of the intoxicating liquors in the indictment mentioned, to him by the defendant, and such statement may go to the jury as evidence to be considered by them, nothwithstanding there is evidence given to the jury tending to show that his father and mother are living. And in such case, it is not error for the court to refuse to instruct the jury that "Unless it is proved beyond reasonable doubt, by the best evidence of which the case will admit, and the evidence of the minor himself is not such evidence, that the minor was at the time of the alleged selling to him of intoxicating liquor by defendant, under the age of twenty-one years, they must find the defendant not guilty."

3. Upon the trial of such indictment, it is not error in the court, to refuse to instruct the jury that "Unless the jury, believe from the evidence, that the defendant C. before (supposed to be intended to mean after) the fourth day of April, 1873, and before the find-

1876. August Term.
State v. Cain.

ing of the indictment, sold to the said Michael Toole intoxicating liquor, and that the said Toole was a minor, and that the defendant knew he was a minor, they must find the defendant not guilty. Nor was it error in the court to refuse to instruct the jury that "In weighing the testimony in the case, the jury should consider all the circumstances of the case, and the declaration of the witness (the minor) as to the motives that prompted the prosecution, and if, from all the circumstances of the case, the jury have any reasonable doubt that the defendant sold the liquor; that the liquor was intoxicating; that the said Michael Toole was a minor, and that the defendant Cain knew he was a minor, they must find him not guilty."

4. The words "knowing the said Michael Toole to be a minor," in said indictment contained, may and should be regarded as immaterial, and as surplusage, at the trial.

5. It was error, for the court, on such trial, to instruct the jury, that "unless the jury believe from the evidence that the defendant, since the fourth day of April, 1873, and before the finding of the indictment, sold to the said Michael Toole intoxicating liquor, and that Toole was then a minor, and the defendant knew he was a minor, or had good cause to believe that he was a minor from reasonable inquiry by him made, they must find the defendant not guilty."

6. Under the provisions of the first clause of section three, of chapter ninety-nine of the acts of the Legislature of West Virginia of the years 1872–3, to constitute a violation of said third section, it is not necessary to prove that the person who sold intoxicating liquors to a minor, knew at the time of the sale that the minor was a minor. It is sufficient, without proof of such knowledge, under the provisions of said third section of said chapter, if it appear beyond reasonable doubt, that the sale was made by the defendant to the person alleged in the indictment, at the place alleged, and that such person was then a minor, unless it also appears, that the sale was made upon the written order, &c., specified in said third section, and unless the prosecution is barred by the statute of limitations, or the sale was not made within the jurisdiction of the court.

7. An indictment founded upon a provision of said third section of said chapter ninety-nine of the acts of the Legislature of 1872–3, is good, though it contain no allegations touching any of the provisions of the first and second sections of said chapter.

8. The sale of intoxicating liquors to a minor is an offence under the third section of chapter ninety-nine of the acts of the Legislature of 1872–3, unless upon the written order, &c., of the parent, &c., specified in said section, though the vendor does not know that the purchaser is a minor.

Writ of error to a judgment of the circuit court of Wood county, rendered in an action therein pending, on the tenth day of June, 1874, in which the State of West Virginia was plaintiff, and John Cain was defendant.

The facts of the case are set forth in the opinion of the Court.

Hon. James M. Jackson, Judge of said circuit court, presided at the trial below.

*W. S. Sands* for said Cain, plaintiff in error.

*H. M. Mathews*, Attorney General, for the State.

HAYMOND, PRESIDENT:

This is a case upon an indictment charging the defendant, that he (John Cain), on the first day of December, A. D. one thousand eight hundred and seventy-three, in the county of Wood, unlawfully did sell intoxicating liquors to one Michael Toole, a minor under the age of twenty-one years, he, the said John Cain, knowing the said Michael Toole to be a minor, and not having the written order of his parents, guardians, or family physician therefor, contrary to the form of the statute in such case made and provided, &c. The defendant appeared to the indictment, and neither moved to quash it, nor demurred thereto, but plead not guilty, and upon the plea of not guilty, issue was duly joined. A jury, duly selected and sworn in the cause, after hearing the evidence, and receiving instructions from the court, by their verdict found the defendant guilty, and assessed his fine at twenty dollars. After the verdict, the defendant moved the court in arrest of judgment on the verdict of the jury, on the ground that the indictment does not show at what particular place in the county of Wood, the intoxicating liquors were sold. The court overruled the defendant's said motion, and rendered judgment against the defendant for the fine assessed by the jury, and the costs, and rendered judgment, in addition to the payment of the fine and costs, that the defendant be imprisoned in the jail of the county of Wood, for the period of ten days, &c.

1876.
August Term.

State
v.
Cain.

The defendant obtained from this Court a writ of error to said judgment.

During the trial of the cause, the defendant's attorney excepted to an opinion of the court, and a bill of exceptions to the opinion was taken, from which it appears that the State, to maintain the issue on its part, gave evidence to the jury, tending to prove that the defendant was a saloon keeper in the city of Parkersburg, in Wood county, in the State of West Virginia, and that, on several occasions, he had, between the fourth of April, 1873, and the time of the finding of the indictment in this cause, sold to Michael Toole intoxicating liquors, and the State, to prove that the said Michael Toole was a minor, inquired of said Michael Toole, while he was on the witness stand, how old he was, to which he replied that he was not yet eighteen years old, and the State offered no other evidence to prove that said Michael Toole was an infant under the age of twenty-one years, except there was evidence given to the jury by the State, tending to prove that, on several previous occasions, the defendant had refused to sell liquor to the prosecuting witness, Michael Toole, on the ground that said Toole was a minor; and the defendant, to maintain the issue on his part, gave to the jury, evidence tending to prove, that on three of the occasions when said Toole had sworn he had bought liquor of the defendant, that none was, in fact, sold to him; also, that said Toole had said he would not have had the defendant indicted if he had not insulted his, the witness', mother, when she went to him (the defendant) to remonstrate with him about selling his father liquor. Also, evidence tending to prove that the said witness, Toole, had represented to several parties, including the defendant, that he was of age; and also, evidence tending to prove that the said Toole, at the Parkersburg city election, in January, 1874, had offered to vote; and it also appeared from the evidence, that both the father and mother of the said witness, Toole, were still living. And after the evidence was all

given to the jury, the defendant asked the court to give to the jury four separate instructions.

The first instruction the court refused to give, as asked, but modified it, and gave it to the jury as modified.

The second instruction the court gave as asked.

The third instruction the court refused to give to the jury.

And the fourth instruction the court refused to give as asked, but modified it, and gave the instruction as modified.

To the refusal of the court to give the instructions asked, and the giving the first and fourth instructions, as modified, the defendant excepted.

The first question to be considered is, did the court err in overruling the defendant's motion, made in arrest of judgment. The counsel for the defendant, to show that the court erred in overruling his said motion, cited in argument here, the case of *Commonwealth v. Head*, 11 Grattan R. 819, and *Commonwealth v. Young*, 15 Grattan, 664.

In the case first named, the syllabus is "An indictment for selling by retail, without a license, ardent spirits, to be drank where sold, must set out the place in the county where the sale is made. It is not sufficient to state the sale in the county." Judge Samuels, in delivering the opinion of the court in the case, said: "An indictment or presentment should always allege the offence with so much fullness, and precision of description, that the defendant may know for what he is prosecuted, and thereby be enabled to prepare his defence; and further, that the conviction or acquittal may be plead in bar of any future prosecution for the same offence. If we try the presentment before us, by this standard, it will be found defective. The grand jury intended to present an offence against the latter clause of the statute, chapter 38, section 18, page 209, Code. This offence is local in its na-

ture; place is of its essence, and yet no place is alleged, but the whole county. A sale of ardent spirits by an unlicensed dealer, not to be drank at the place of sale, would fall within the first clause of the section above cited. The identity of the place at which the spirits were to be drank, with the place at which they were sold, enters into, and forms part of, the offence under the latter clause of the statute. If this be so, the defendant should be apprised of the place alleged, so that he may be prepared with proof, if any he have, to show that the place, and that of drinking, are not the same. The lawful traffic in ardent spirits is had under a license, designating a place; the offence of unlawful traffic is committed by a sale at a place without license to sell at such place." Further on, the Judge says: "He (defendant), may be licensed to sell at one place within the county; and relying on his license, and the consciousness of not having sold at any other place, would go confidently into trial; yet, upon the trial, under the general charge of selling in the county, proof may be offered to show a sale at any place within the county. This proof, the defendant could not anticipate, &c." In that case the defendant, demurred to the indictment, and the demurrer was sustained by the inferior court, and the commonwealth obtained a writ of error. In the case in 15 Grattan above cited, the court held that, "an indictment under section 18, chapter 38 of the Code, the words, "without having a license therefor, according to law," are not equivalent to the words, "without paying such tax, and obtaining such certificate as is prescribed by the fourteenth section," which are the words used in the statute; and the indictment is defective. In an indictment for a statutory offence, it is generally proper and safest to describe the offence in the very terms used by the statute for the purpose. But, it is sufficient to use in the indictment, such terms of description, as that, if true, the accused must of necessity be guilty of the offence described in the statute. If the indictment may be true, and still

the accused may not be guilty of the offence described in the statute, the indictment is insufficient.

In the last named case, the defendant appeared before trial, to the indictment, and moved to quash the same, and the court sustained the motion, and the commonwealth obtained a writ of error. We are also cited by defendant's counsel, to the case of *The State of West Virginia v. A. J. Church*, 4 West Va. R., 745. In that case it was held, "that a violation of the condition of the bond required in order to obtain a license to sell spirituous liquors, is a violation of the law relating to the revenue, and is a case in which the State may have a writ of error.

It is not error to sustain a demurrer to an indictment for a violation of the conditions of such bond, when the indictment does not allege that the violation occurred at the place the liquors were to be sold under the license." In that cause, the indictment was founded on the twelfth section of chapter 32 of the Code of this State. The indictment alleged that the defendant was duly licensed to sell spirituous liquors, &c., but fails to aver in what county, or in what place, he was licensed to sell. The fifteenth section of chapter thirty-two provides, that every certificate to sell spirituous liquors, shall specify the house where they are to be sold, and a sale at any other place, shall be held to be a sale without license. The defendant, appeared and demurred to the indictment and the demurrer was sustained, and the State obtained a writ of error. This case was clearly decided upon the principles decided in the said causes in 11 and 15 Grattan. But the indictment now before us, is founded upon the first clause of the third section of chapter ninety-nine of the Acts of the Legislature of 1872 and 1873, pages two hundred and fifty-three, and two hundred and fifty-four.

The third Section is in these words: "It shall be unlawful for any person, or persons, by agent, or otherwise, to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians, or family physicians, or to persons intoxicated, or to persons who

are in the habit of getting intoxicated." It will be observed, that the indictment in this case, is in the language of the first clause of said third section, and if the averments of the indictment are true, the defendant must, of necessity, be guilty of the unlawful offence denounced in said first clause. Here place is, in no wise, of the essence of the offence, as in the cases above cited. It is not improper, in such cases, to allege the place within the county, but it is not more essential to do so than in an indictment for assault and battery, as it seems to me. And I am not aware that it has ever been held, that it is essential to allege the place within the county, in an indictment for assault and battery, at which the alleged offence was committed. The reasoning in the cases cited above, does not apply to this case. But if the omission to allege the place within the county, is a defect, it is one that might have been reached by demurrer, and is cured after verdict, by the eleventh section of chapter 158 of the Code, p. 715.

But it is further maintained by the counsel for the defendant, that, admitting all that is charged in the indictment to be true, still it does not amount to an offence under said ninety-ninth chapter of the Code of 1872 and 1873, because the seventh section of that chapter provides that: "For every violation of the provisions of the first, second and third sections of this act, every person so offending, shall forfeit and pay a fine of not less than twenty dollars, and be imprisoned in the jail of the county not less than ten days, nor more than thirty days, and pay the costs of prosecution," and that the act charged in the indictment, cannot amount to an indictable offence, unless, the several acts declared by the first and second section each, of said chapter, be charged in the indictment to have been done or committed in connection with the said act, in the indictment in this case, mentioned. Or, in other words, that by the provisions of said seventh section, to constitute an indictable offence thereunder, the indictment must allege and

charge in the same count, and in connection, and as occurring together, a violation of the provisions of the first, second, and third sections of said chapter 99. I have already stated the provisions of the said third section. The first section of said chapter 99, provides that: "It shall be unlawful for any person or persons, by agent, or otherwise, without first having obtained a license therefor, to sell, in any quantity, intoxicating liquors to be drank in, upon, or about the building or premises where sold, or to sell such intoxicating liquors to be drank in any adjoining room, building, or premises, or other place of resort connected with said building: *Provided*, That no person shall be granted a license to sell, or give away intoxicating liquors, without first giving a bond to the municipality, or authority, authorized to grant licenses, which bond shall be made payable to the "State of West Virginia," and be in the penal sum of not less than three thousand dollars, and, in the discretion of the Court, may exceed that sum with at least two good and sufficient securities, who shall be freeholders and residents of the county, conditioned that they will pay all damages to any person, or persons, which may be inflicted upon them, either in person, or property, or means of support, by reason of the person so obtaining a license, selling or giving away, intoxicating liquors; and such bond may be sued and recovered upon, for the use of any person or persons, or their legal representatives, who may be injured by reason of the selling of intoxicating liquors by the person, or his agent, so obtaining the license." The second section of said chapter, provides that "it shall be unlawful for any person, or persons, by agent, or otherwise, to sell intoxicating liquors behind screens, frosted windows, or any other device, designed or intended to protect the seller, or buyer, from public observation."

If we yield to the construction contended for by defendant's counsel, it would be lawful for a person who had license, to sell intoxicating liquors to sell to a minor, and also to sell to any person behind screens, frosted

windows, &c., and no person could be indicted, under the first section, for selling intoxicating liquors without a license, unless they were sold to a minor, and so sold behind screens, frosted windows, &c. Such a construction, it seems to me, would fail to reflect the obvious purpose and intent of the legislature, and would, in fact, involve an absurdity. In the exposition of a statute, the leading clue to the construction to be made, is the intention of the legislator, and that may be discerned from different signs. As a primary rule, it is to be collected from the words; when the words are not explicit, it is to be gathered from the occasion and necessity of the law, being the causes which moved the legislature to enact it. Dwarris, page 693. The safe and established rule of construction is, that the intention of the lawgiver, and the meaning of the law, are to be discerned, and deduced from a view of the whole, and every part of a statute taken and compared together. Id. 698, 703. As one part of a statute is properly called in to help the construction of another part, and is fitly so expounded as to support and give effect, if possible, to the whole, so is the comparison of one law with other laws, made by the same legislature, or upon the same subject, or relating expressly to the same point, enjoined for the same reason, and attended with a like advantage. In applying the maxims of interpretation, the object is throughout, first, to ascertain, and next, to carry into effect, the intentions of the framer. It is to be inferred that a code of statutes, relating to one subject, was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. It is, therefore, an established rule of law, that all acts *in pari materia* are to be taken together, as if they were one law, and they are directed to be compared in the construction of statutes, because they are considered as framed upon one system, and having one object in view. And the rule, it is said, equally applies, though some of the statutes may have expired, or are not referred to in the others, Id.

669, 700. *Forqueran v. Donnelly*, 7 West Va. R. 115, 6 paragraph of the syllabus. Besides the occasion and the name of the enactment, the letter of the act, the context, the spirit of the act, the subject matter, and provisions of the act, have all to be considered, Id. 702. *Fox's Adm'r v. Commonwealth*, 16 Gratt. R. 9, 10. The policy of our legislation has been, for some years past, to forbid the sale of spirituous liquors, &c., by persons licensed to sell the same, to minors. Code, chapter thirty-two, section twelve. The word "and" is frequently construed "or," "or" is frequently construed "and." The "Particle, *or* is often construed *and*, and, *and*, construed *or*, to further the intent of the parties in legacies, devises, deeds, bonds and writings." Bouvier's Law Dic., pages 261 and 262, and authorities there cited. The rules of construction of a statute, are in most respects, the same as the rules of construction of deeds and wills, but in some respects they are not, the difference arising from the different natures of the subject. Dwarris, ch. 12.

From what has gone before, it seems clear to me, that it was the purpose of the legislature, by the third and seventh sections of the said ninety-ninth chapter, to make the sale of intoxicating liquors to minors, without having the order specified, an indictable offence, and that the indictment in this cause, does charge an indictable offence under said sections. When Toole was asked the question by the State, how old he was? no objection was made by the defendent to the question, or to his answer thereto as being improper evidence. He answered, that he was not yet eighteen years old. This answer as I have stated, went to the jury as evidence, without objection, save an instruction asked after the evidence was closed.

At this day of general intelligence, I think it is not improper, in a case like this, to allow the minor to testify as to his age. It is perhaps true, that the evidence of the minor may not be so satisfactory, as to the fact,

1876. August Term.

State v. Cain.

as the evidence of the father or mother, or some other person present at his birth—still, his statement on oath as to his age, should be received and permitted to go to the jury as evidence, to have such weight as it is entitled to have, under the circumstances. The weight to be given to it, by the jury, should, in some degree, depend on the age and intelligence of the witness. It is true, it is a rule of evidence, that the best evidence of which the case, in its nature, is susceptible, should be required. But still, when there is no substitution of evidence, but only a selection of the weaker instead of the stronger proofs, or an omission to supply all the proofs capable of being produced, the rule is not infringed. 1st Greenleaf Ev., page 105, section 82, and authorities there cited. In this case, evidence was given, tending to prove that the father and mother of Toole are living, but, it is not stated whether they reside in the State or not.

The third instruction asked by the defendant, and refused by the Court, is in these words, viz: "Unless it is proved beyond reasonable doubt, by the best evidence of which the case will admit, and the evidence of the witness himself is not such evidence, that the witness, Michael Toole, was at the time of the alleged selling to him of intoxicating liquor by the defendant, under the age of twenty-one years, they must find the defendant not guilty."

It was in evidence before the jury, that the defendant on several previous occasions, had refused to sell liquor to the prosecuting witness, Toole, on the ground that Toole was a minor.

The third instruction asked by the defendant, was well calculated to mislead the jury, and the Court did not err in refusing to give it, because of its liability to mislead, and because the statement of the witness, Toole, as to his age, was legal evidence for the consideration of the jury to have its proper weight.

The first instruction asked by the defendant is in these words, viz: "Unless the jury believe from the evi-

dence, that the defendant, John Cain, before (supposed to be after) the fourth day of April, 1873, and before the finding of the indictment, sold to the witness, Michael Toole, intoxicating liquors, and that the said Toole was a minor, and that the defendant knew he was a minor, they must find the defendant not guilty."

The fourth instruction asked by the defendant, is as follows, viz: "In weighing the testimony in the case, the jury should consider all the circumstances of the case, and the declaration of the witness as to the motives that prompted the prosecution, and if from all the circustances of the case, the jury have any reasonable doubt that the defendant sold the liquor; that the liquor was intoxicating; that the witness, Toole, was a minor, and that the defendant Cain, knew he was a minor, they must find him not guilty."

As I have already stated, the said first and fourth instructions the court refused to give, as asked by the defendant. The object of the third section of chapter ninety-nine, was evidently to, absolutely, prohibit the sale of intoxicating liquors to minors by persons licensed to sell spirituous liquors, or by any other person except under the circumstances specified in the third section. The persons who procure license to sell spirituous liquors, and use them, are fully aware of the prohibition and penalties for a violation thereof, and it is their duty to take care and to see that they do not sell intoxicating liquors to minors. They know by the provisions of said ninety-ninth chapter, they are, under penalties, forbidden to sell to minors without said order, and if they do so, they do it at their peril; that the seller may, sometimes, be deceived in information and judgment as to the age of a customer, as to his being a minor or not, is one of the perils he runs, and must encounter in obtaining and using the license granted. Whether the person licensed to sell intoxicating drinks, knew, at the time he made sale thereof, that the person to whom the sale is made is a minor or not, is immaterial under the law. If the customer is,

1874. August Term.

State. v. Cain

in fact, a minor at the time the sale is made, the licensed dealer in selling to such minor, is guilty of a violation of said third section, as well also, if he made the sale without license, no matter whether he knew the customer was a minor or not, or whether he had made enquiry concerning his age or not. The said third section applies as well to persons who sell intoxicating liquors to minors without license, as those who have license. So far as sales to minors without said order are concerned, his license is neither a privilege nor protection to him. And if he sells to minors except under the circumstances stated in the third section, he is guilty of a violation of the provisions of that section touching sales to minors.

In the case of the *State v. Hartell*, 24 Wisconsin R. p. 80, it was decided by the Supreme Court of Wisconsin, in the year 1869, that "the sale of intoxicating liquors to a minor is an offence under section 1, chapter 128 laws of 1867, though the vendor does not know that the purchaser is a minor. In that case, Chief Justice Dixon, in delivering the opinion of the court, says: "The authorities cited by the assistant attorney general seem to leave no doubt as to the disposition which ought to be made of this case. The words 'knowingly' or 'wilfully,' or other words of equivalent import, are omitted from the statute, and the offence is made to consist solely in the fact of a sale of intoxicating liquors, or drinks, to a minor. Laws of 1867, chapter 128, section 1. The authorities are to the effect that, where a statute commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact, or state of things contemplated by the statute, will not excuse its violation. 3 Greenleaf's Evidence, sec. 21; *Barnes v. The State*, 19 Connecticut, 398; *Commonwealth v. Marsh*, 7 Metcalf, 472; *Commonwealth v. Boynton*, 2 Allen, 160; *Commonwealth v. Farren*, 9 Id. 489; *Commonwealth v. Waite*, 11 Id. 264; *Commonwealth v. Raymond*, 97 Massachusetts, 567; *Commonwealth v. Elwell*, 2 Met. 190."

In the case of the *Commonwealth v. Richard Boynton*, 2 Allen (Mass.) 160, it was decided by the supreme judicial court of Masssachusetts, that, "A person may be convicted of being a common seller of intoxicating liquor, although he did not know, or suppose the liquor sold by him to be intoxicating." In that case, Judge Hoar, in delivering the opinion of the court, says: "The court are of opinion that the sale of intoxicating liquors, in violation of the statute prohibition, is not one of these cases in which it is necessary to allege, or prove, that the person charged with the offence knew the illegal character of his act; or in which a want of such knowledge would avail him in defence. If the defendant purposely sold the liquor, which was, in fact, intoxicating, he was bound, at his peril, to ascertain the nature of the article which he sold. When the act is expressly prohibited, without reference to the intent or purpose, and the party committing it was under no obligation to act in the premises unless he knew that he could do so lawfully, if he violates the law, he incurs the penalty. The salutary rule, that every man is conclusively presumed to know the law, is sometimes productive of hardship in particular cases. And the hardship is no greater where the law imposes the duty to ascertain the fact. It could hardly be doubted that it would constitute no defence to an indictment for obstructing a highway, if the defendant could show that he mistook the boundaries of the way, and honestly supposed that he was placing the obstruction upon his own land."

In the case of the *Commonwealth v. Patrick H. Farren*, 9 Allen (Mass.) R. 489, it was decided that, "A person may be convicted of selling adulterated milk, under Stat. 1864, chapter 122, section 4, although he did not know it to be adulterated; and an averment in the indictment that he had such knowledge may be rejected as surplusage."

In the case of the *Commonwealth v. Raymond*, 97 Massachusetts R. 567, Judge Foster, in delivering the opinion

1876.
August Term.

State
v.
Cain.

of the court, says, at pages 568, 569, "The defendant is charged with an offence under the first clause of Stat. 1866, chapter 253, by which it is made punishable to kill a calf less than four weeks old, 'for the purpose of sale.' It was not necessary to allege in the indictment that he knew the calf to be less than four weeks old. Under this clause, as under the laws against the sale of intoxicating liquor, or adulterated milk, and many other police, health, and revenue regulations, the defendant is bound to know the facts, and obey the law, at his peril. Such is the general rule when acts, which are not *mala in se*, are made *mala prohibita* from motives of public policy, and not because of their moral turpitude, or the criminal intent with which they are committed." See, also, *Commonwealth v. Smith*, 103 Massachusetts R. 444, 445.

In the case of *Ulrich v. Carpenter*, 6 Bush. Kentucky R. 400, it was held by the Court of Appeals of Kentucky, that, "It is as incumbent on the vendor of liquor to know that his customer labors under no disability, as it is for him to know the law. Judge Peters, in delivering the opinion of the court, in that case, says: "The law commands him not to sell liquor to minors, unless by the written consent, or request of the father of such minors, if living, or of their mother, or guardian, if the father be dead. It is as incumbent on the vendor of the liquor to know that his customer labors under no disability, as it is for him to know the law, and his ignorance of neither will excuse him. In the third volume of Greenleaf on Evidence, section 21, eighth edition, it is laid down by the author, that, "*Ignorance, or mistake of fact*, may, in some cases, be admitted as an excuse, as when a man, intending to do a lawful act, does that which is unlawful. Thus, where one, being alarmed in the night, by the cry that thieves had broken into his house, and searching for them with his sword, in the dark, by mistake, killed an inmate of his house, he was held innocent. So, if the sheep of A. stray into the flock of B., who drives and shears them, supposing them to be his own, it is not lar-

ceny in B. This rule would seem to hold good in all cases where the act, if done knowingly, would be *malum in se*. But when the statute commands that an act be done, or omitted, without culpability, ignorance of the fact, or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, when the law enacts the forfeiture of a ship, having smuggled goods on board, and such goods are secreted on board by some of the crew, the owners and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred, notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police, and other laws and regulations, for the mere violation of which, irrespective of motives, or knowledge of the party, certain penalties are enacted; for the law, in these cases, seems to bind the party to know the facts, and to obey the law, at his peril."

In the case of *Barnes v. The State*, 19 Connecticut R. 397 top page, and 398 marginal page, it was decided by the Supreme Court of Errors of the State of Connecticut, in a prosecution for selling spirituous liquors to a common drunkard, that, "To sustain such prosecution, it is not necessary to prove that the defendant *knew* that the person to whom the liquor was sold, was a common drunkard. Where it appeared in such prosecution, that the sale complained of was made by the clerk of the defendant, and he offered evidence to show, that he had given such clerk specific directions to sell no liquors to common drunkards; it was held, that such evidence was admissible." Judge Ellsworth, in delivering the opinion in the case just cited, says: "So we think the county court was correct in holding, that knowledge of one's character, as a common drunkard, is not essential, to subject the offender to the penalty of the law. The language used is too clear and and too positive to be mistaken; nor can we mistake the evil aimed at by the legislature. * * Can the ravisher plead ignorance? A female under the age of twenty-one years, is seduced, or is en-

ticed away; is ignorance of her minority any defence? Or, if adultery is committed, can the adulterer plead his ignorance that the woman was married?

As to whether the seller intended to violate the law, or not, at the time of selling to the minor, is, under the authorities above cited, immaterial, except in mitigation of the punishment, for, if he made the sale to the minor, except under the circumstances stated in the third section, he is guilty of a violation of the prohibition of the section, and subjects himself to penalties of the seventh section of said chapter 99. If the legislature had intended that the seller of intoxicating drinks, whether licensed, or not, should only be subject to prosecution when he made sale to a minor, knowing that he was a minor, they would surely so have said in the law. But they have not said so, in said third section, and if they had so said, the law would manifestly have failed in a great degree to accomplish its manifest object. The conditions of the bond, with security required from persons licensed to sell spirituous liquors, &c., by the twelfth section of chapter 32, of the Code of 1868, and therein specially prescribed, is that he will not permit any person to drink to intoxication on any premises under his control, and will not sell or furnish any intoxicating drink to any person who is intoxicated at the time, or who is known to him to have the habit of drinking to intoxication, or who is under the age of twenty-one years. This condition of the bond, under said twelfth section, as to sales to minors, is substantially the same as the provision of the third section of said chapter 99, except as to said order. And the fortieth section of said chapter 32, of the Code of 1868, provides that "The provisions of this chapter, shall, in all cases, be construed as remedial, and not penal." The thirty-second chapter of the Code, and the first, second, third and fourth sections thereof, contain the law of this State, mostly, if not altogether, upon the subject of selling, by retail, spirituous liquors, with and without license, as it

existed at the passage of said chapter 99, of the acts of 1872 and 1873. Chapter 99 was passed on the fourth day of April, 1873, and is entitled: "An act to provide against the evils resulting from the sale of intoxicating liquors in the State of West Virginia." The title clearly indicates the intent of the legislature, as well as its object in enacting the different sections thereof. The title of acts of the legislature under our Constitution, bear an important relation to the body of the acts. (Sections one and three of said chapter 99, operate an amendment and repeal of parts of section one and twelve of said chapter thirty-two of the Code. Said sections of each of said chapters in part, are upon the same subject, and intended to remedy the same evils, and should be construed according to the rule prescribed upon the subject, by the fortieth section of said chapter 32, that is, as remedial.) It would be strange, indeed, under our legislation, to construe sections one and twelve of said chapter 32, so far as the same are not amended and repealed by sections one and three of said chapter 99, as remedial, and said sections one and three, as penal statutes. The object of the act, as prescribed in the title thereto, manifestly cannot be accomplished, except by construing the first clause of said third section, as I have indicated. It is clear that without such construction, the said third section, in relation to minors, would almost, if not quite, be inoperative and of no effect. Tucker, in the first volume of his commentaries, at page 15, says: "Remedial statutes are to be construed liberally; and there are three points to be considered in the construction of all remedial statutes, the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was for which the common law did not provide, and what remedy the parliament hath provided to cure the mischief. And it is the business of the judges so to construe the act, as to suppress the mischief and advance the remedy."

I am at a loss to conceive, when I connect the language employed in the first clause of said third section, in relation to selling to minors, with said sections of the Code, and, with the manifest object of the chapter as expressed in the clear language of its title, how any construction, other than I have given the same, can be arrived at without a clear departure from the purpose and intent of the legislature in enacting the chapter. It is true, that, with us, in felonies, and most cases of misdemeanor, under the common law, intent is regarded as being one of the chief elements necessary to constitute the crime or offence, but under this said third section, the commission of the act prohibited, constitutes the offence. This is manifest, as I think from the legislation to which I have referred. I am aware that the highest courts of several of the States, have differed in the construction of similar legislation. Some of them have taken the view I have presented, and others a different view. But, I apprehend if the courts of the states adopting a different view from that I have taken, had considered their state legislation such as required them to construe the legislation as remedial, and not penal, they would have arrived at the same conclusion I have felt myself bound to adopt in this case.

Whether said third section of said chapter 99, is inexpedient or unnecessarily harsh in its provisions, in whole or in part, is not for us to determine. That is a subject proper for the consideration of the legislature; it can modify or amend it at pleasure. Our duty is to construe and administer the law according to the purposes and intent of the legislature, as therein indicated, and not to make or amend the law. Although the court refused to give the first and fourth instructions asked by the defendant to the jury, as asked, still the court modified each of said instructions, and gave them to the jury as modified, as follows:

*First*, "Unless the jury believe from the evidence that the defendant, John Cain, since the fourth day

of April, 1873, and before the finding of the indictment, sold to the witness, Michael Toole, intoxicating liquor, and that said Toole was then a minor, and the defendant knew he was a minor, or had good cause to believe that he was a minor, from reasonable inquiry by him made, they must find the defendant not guilty.

"*Fourth,* In weighing the testimony in the case, the jury should consider all the circumstances of the case, and the declaration of the witness, as to the motives that prompted the prosecution; and if, from all the circumstances of the case, the jury have any reasonable doubt that the defendant sold the liquor; that the liquor was intoxicating; that the witness, (Toole) was a minor, or had good cause to believe that he was a minor, from reasonable inquiry by him made, they must find the defendant not guilty." These two instructions, as modified by the Court, and given to the jury, are erroneous, and should not have been given for the reasons above stated. But it is clear that they were not prejudicial to the defendant, and could not, by possibility, have operated to the prejudice, or in the slightest degree have injured, the defendant with the jury. They were favorable to him, and if they had any effect with the jury, it must have been favorable to the defendant. And indeed the defendant's counsel, in his argument before us, did not claim that the defendant could have been, or was injured, by the instructions as given by the court to the jury, and if he had, the court could not have so determined. The words "knowing the said Michael Toole to be a minor," contained in the indictment, may be treated as surplusage, as they were unnecessary to complete the offence under said third section.

For the foregoing reasons, the judgment of the circuit court rendered in this cause, on the tenth day of June, 1874, against the defendant, must be affirmed, and the State of West Virginia recover against the defendant, John Cain, her costs in this Court expended, and $30. damages.

The other Judges concurred.

DECREE AFFIRMED.