## McCOLLUM *v.* THE STATE.

1. A witness may testify as to his own age, notwithstanding all the informa-tion he has upon the subject is derived from his mother, who is living in the county where the trial occurs.
2. An inappropriate charge is not cause for a new trial when it is manifest that the complaining party was not injured thereby.
3. The sentence was not excessive, and if it were, this would not be cause for a new trial.
4. The evidence authorized the verdict.

Argued December 21, 1903. — Decided January 12, 1904.

Indictment for selling liquor to a minor.    Before Judge Kim-sey.    Habersham superior court.    November 3, 1903.

*Fermor Barrett*, for plaintiff in error.

*W. A. Charters, solicitor-general*, contra.

FISH, P. J.　David McCollum was convicted of unlawfully selling intoxicating liquor to a minor, one John D. Ayers.　A new trial having been refused, the accused excepted.　Upon the trial, in September, 1903, Ayers testified that he was nineteen years old in the summer of that year; that he purchased the liquor from the accused in the early part of the year 1902, before the bill of indictment was found, in March of that year.　He further swore that all he knew about his age was what his mother told him, and that she was then living in the county where the trial was had. Counsel for the accused moved to rule out the testimony of Ayers as to his age, upon the ground that his mother, who knew the fact and was living in the county, was a competent witness, and what she had told her son in reference to his age was hearsay and inadmissible.　The court refused to rule out the testimony, and complaint was made of this ruling, in the motion for a new trial. The ruling of the court was not erroneous.　It is well settled that a witness may testify as to his own age.　*Central Railroad* v. *Coggin*, 73 *Ga.* 689; 1 Gr. Ev. § 430 (k); Underhill's Crim. Ev. § 342; 22 Am. & Eng. Enc. L. 647; 1 Enc. Ev. 735.　In Bain *v.* State, 61 Ala. 75, it was held: "A witness may testify as to his own age, though he states that his knowledge is derived from what his mother told him.; and the fact that his mother, who is not shown to be dead, or out of the jurisdiction of the court, was not introduced, does not affect the admissibility of the evidence, though the jury may consider it, with the other circumstances of the case, in determining its credibility."　It was held in Cherry *v.* State, 68 Ala. 29, that "A person may testify to his own age; and his testimony is not rendered inadmissible by his further statements, given as reasons for his testimony as to the fact, 'that his mother told him so, that it was written down in a book which his father had in the court-house.'"　And in Pearce *v.* Kyzer, 16 Lea (Tenn.), 521, it was held: "A defendant in a suit, who relies upon the defense of infancy, is a competent witness to prove his own age, and it is no objection to his testimony that he obtained the information as to the year of his birth from his mother, who is living in the county in which the suit is tried."　In State *v.* Cain, 9 W. Va. 559, it was held that it was competent for a witness to

testify as to his own age, with a view of proving that he was a minor at the time of a sale of intoxicating liquors to him, notwithstanding there was evidence given to the jury tending to show that his father and mother were living. See also People *v.* Ratz, 115 Cal. 132. Our Civil Code, § 5177, provides: " Pedigree, including descent, relationship, birth, marriage, and death, may be proved either by the declarations of deceased persons related by blood or marriage, or by general repute in the family, or by genealogies, inscriptions, 'family trees,' and similar evidence." This section, however, does not, as contended by the plaintiff in error, render a witness incompetent to testify to his own age, when his father or mother is living and within the jurisdiction of the court. The section, in providing that pedigree, etc., may be proved by the declarations of deceased persons related by blood or marriage, refers to the declarations of third persons, which, according to the authorities, are not admissible, unless such persons be dead. See cases above cited.

2. Upon cross-examination, Ayers swore that no one was with him when he bought the liquor from the accused, and that he did not tell the accused, at a given time and place, that one Watson was with him, at the house of the accused, when the liquor was bought, but that he told the accused that he left Watson some two or three hundred yards from the house of the accused when he went to buy the liquor, and that he carried it back to where Watson was, and he and Watson drank it. Watson testified that he was never at the house of the accused with Ayers. The accused, in his statement, said that Ayers told him, at the time and place referred to, that Watson was with him (Ayers) at the time that he bought the liquor. The accused also stated that he never sold Ayers any liquor at any time. The court charged the jury: " If a witness has been impeached in any of the modes known to the law, or in any manner known to the law, it is the duty of the jury to disregard his testimony, unless corroborated in material particulars; and if a witness has been impeached as required by law so that the jury would disregard his entire testimony, still it is their right and privilege to believe him if he is corroborated by other testimony in the case — corroborated in material particulars in the case, although impeached." In the motion for a new trial error was assigned upon this charge, because there was no corroborating

evidence to sustain the witness sought to be impeached. The exception to the charge was well taken. Ayers was the only witness for the State, and there was nothing to corroborate his testimony. We do not think, however, that this error of the court was such as to require the grant of a new trial, as it is manifest that the accused was in no way prejudiced by the charge. There was absolutely no evidence which the charge could have misled the jury to consider as corroborating Ayers's testimony, and if in the minds of the jury Ayers had been impeached, they would, under the instruction given, and in the absence of any corroboration whatever, have disregarded his testimony. It is evident that they did not believe the statement of the accused; for in it he said he had never sold any liquor to Ayers, and if they had believed that the statement successfully impeached Ayers, they certainly, it seems, would have believed the balance of the statement that the accused had never sold the liquor as charged, and have acquitted him. It has been frequently held by this court that the statement of the accused is not, strictly speaking, evidence, and it may be doubted if the mere statement of the accused will authorize a charge upon the subject of the impeachment of witnesses. It is perfectly obvious that the testimony of Watson did not even tend to impeach Ayers.

3. The fine imposed by the court upon the accused was $500. Complaint was made in the motion for a new trial that this was excessive. Under the statute the court could have imposed a fine not to exceed $1,000, and a fine within that limit was within the discretion of the trial judge, and is not the subject of review. *Baldwin* v. *State*, 75 *Ga.* 482. Morever, if it were excessive, this would not be cause for a new trial. *Bellinger* v. *State*, 116 *Ga.* 545.

4. The evidence fully warranted the verdict, and the court did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*