Case 15—PETITION EQUITY—October 3.

## Kennedy v. McElroy, &c.

APPEAL FROM RUSSELL CIRCUIT COURT.

REVERSION OF TITLE UPON FAILURE OF TRUST.—Whe e land has been granted by the Commonwealth in trust for a certain purpose, and the object of the trust fails or ceases to exist, the title at once reverts to the Commonwealth as matter of law. It is only in case of a forfeiture of title by the grantee in consequence of some act of his that the forfeiture must be declared by a direct proceeding for that purpose.

H. C. BAKER for appellant.

1. The Legislature has the power to provide, either by a general law or a special law, how the title to lands held by a society shall vest upon its dissolution.

Kennedy v. McElroy, &c.

2. A legislative enactment must be clearly unconstitutional to authorize the courts to so adjudge.

3. The Chancellor has jurisdiction to enjoin trespass and injury to property. (Musselman v. Marquis, 1 Bush, 463; Hillman, by &c., v. Hurley, &c., 82 Ky., 626; Preston v. Preston, 85 Ky., 16; 87 Ky., 422.)

JAMES GARNETT, MONTGOMERY & JONES FOR APPELLEES.

1. This is an action of ejectment, and the motion to transfer to the common law docket should have been sustained.

2. There is no pretense that the several defendants were acting in concert, and, therefore, the plaintiff should have been required to elect against which one of them she would prosecute her action.

3. The title to the lands in controversy is in the Lewis Academy. The Act of January 30, 1851, attempting to divest it of title, is unconstitutional. (11 Bush, 419; 16 B. M., 170; 2 Duv., 4; 1 Bush, 305; 79 Ky., 73.)

   The Lewis Academy is as much an entity as it was the day of its creation. (Perry on Trusts, vol. 2, secs. 722, 731, 732 and 744.)

   That the charter of a corporation has been forfeited must be ascertained by a direct proceeding, and not collaterally. (6 B. M., 601; Am. and Eng. Encyclopedia of Law, vol. 4, p. 302, sec. 8; 9 B. M., 470; 12 B. M., 79.)

4. If the Lewis Academy did not exist as a corporation, there are other seminaries which, under the general law of 1798, have an interest in the lands in question. (M. & B. Statutes, vol. 2, p. 1001.)

5. If the county court ever had any interest in these lands it has not parted with its interest.

   It does not appear that the order relied on as divesting the county court of title was made when the full Court of Justices of the Peace were present, presided over by the County Judge, and, therefore, it was not valid. (10 Bush, 717.)

   Assuming the order to have been legal, it does not appear that it was ever accepted by Riffe, to whom the sale purports to have been made, and, therefore, the title did not pass.

   The county courts can only speak by their records. (4 Bush, 307.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

By an Act of the Legislature, approved 31st day of January, 1809, Aaron Stratton and others, and their successors, were constituted a body politic and corporate, to be known by the name of the "Trustees of the Lewis County Academy." The act then proceeded to give said

trustees the usual powers as such. It also provided that said trustees were "entitled to locate, survey and patent six thousand acres of land for the benefit of said academy, on the terms and conditions prescribed in the act, entitled 'an act to establish and endow certain academies, and the several acts amendatory thereto.'" It also appears that these trustees, pursuant to said act, procured a patent to about twenty-five hundred acres of land lying in Russell county, which is one of the counties in which vacant land might be appropriated under said act. In 1825, the Legislature passed another act, authorizing said trustees to sell said land for the benefit of said academy. But said trustees failed to sell or otherwise dispose of said land, and, in 1851, there being no trustees, and the academy being dissolved, the Legislature passed another act repealing the act of 1825 authorizing said trustees to sell said land, and vesting the same in the county of Lewis, for the benefit of the common schools of that county, and authorizing the Lewis County Court to sell said land for that purpose, and authorizing said court to make said sale by agent. That the court, pursuant to such authority, did appoint Peter Riffe to sell said land ; that he did sell the same; that the sale was approved by the court and deeds were duly made to the purchasers; that the appellant is the remote vendee of these purchasers of said land, and the appellees are trespassers on parts thereof, cutting, removing and destroying valuable timber, thereby committing irreparable injury, etc. The appellant's petition discloses, substantially, the foregoing facts, and the court sustained a demurrer to the petition. The decision of the court on that demurrer is the subject of review.

It is alleged, in substance, that neither the trustees ap-

pointed, nor their successors, sold nor appropriated the land granted to them in trust for the Lewis County Academy; that in 1851, there being no trustees, and the " academy being dissolved," the Legislature granted said land to Lewis county for the benefit of its common schools, and authorized the county court, by itself or agent, to sell the land for that purpose, which it did, etc. It is to be observed that the Legislature granted this land to the persons named in trust for a certain purpose, and the title of the Commonwealth did not pass from it to the grantees, except in trust for that purpose; and when the object of the trust became extinct, the title reverted to the Commonwealth as matter of law, unless the Commonwealth had otherwise disposed of the reversion—then, of course, the title would not revert. The reversion of the title, in such case, is not in consequence of a forfeiture of title, but in consequence of the failure of the purpose to which it was granted, consequently it reverts to the grantor (in this case, the Commonwealth.) It is only in case of a forfeiture of title by the grantee in consequence of some act of his, that the forfeiture must be declared by a direct proceeding for that purpose. But in case of an escheat or reversion, which only occurs in consequence of the cessation of the particular title granted, no direct proceeding is required to establish and declare either fact; but when the event occurs that entitles the party to the escheat or reversion, the title of the grantor may be resumed as a matter of right. (See White v. White, 2 Met., 185; Stevenson v. Dunlap's Heirs, 7 Mon., 134; Fry v. Smith, 2 Dana, 38.)

It is alleged that the county court, not the county judge, sold the land, or appointed Peter Riffe to sell it.

If this is not true, the question should be raised by answer. It is also suggested that this land, by a former act, was granted to the use of academies generally, in case the grant to the particular academy failed. If this be true, and the object of such grant still exists, the fact should be made to appear by answer.

The judgment is reversed, and the case is remanded, with directions to overrule the demurrer.